Revised September 28, 2000

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 99-41027
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

VERONICA REYES, FRANCISCO REYES

Defendants-Appellants.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

September 11, 2000

Before DUHÉ, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Francisco and Veronica Reyes were convicted following a jury trial on one count of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(D), and one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) and 18 U.S.C. § 2. The Reyeses now appeal their convictions principally on the basis that the district court improperly questioned witnesses in a fashion that so

favored the prosecution as to deprive the Reyeses of a fair trial.  For the reasons set forth below, we affirm the convictions.

Francisco and Veronica Reyes (brother and sister) were convicted following a series of events that began at a United States Border Patrol Checkpoint south of Hebbronville, Texas.  The Reyeses' car, a Mercury, was sent to a secondary inspection area after an agent's dog alerted to the presence of narcotics.  Border Patrol Agent Garza ascertained the identity of the Reyeses and inquired as to their destination (north to San Antonio) and, when a search of the car produced no narcotics, allowed the Reyeses to proceed north.

Nearly simultaneously, a local rancher informed Border Patrol that a suspicious-looking pickup truck had been traveling through the Green Hill Cemetery area)) an area of local repute for evading the checkpoints.  Checks on the information provided by the rancher showed that the truck belonged to Francisco Reyes.  Other agents from the Border Patrol departed to seek out the truck, relaying this information via radio communication to all local agents.  Agent Garza, now traveling in his vehicle away from the checkpoint into Hebbronville, heard this communication, and again nearly simultaneously, noticed the Mercury on the road.  Recalling the name Francisco Reyes from the just-completed inspection of the car, Agent Garza became suspicious and attempted to follow the Reyeses, but lost them in traffic.  When a second radio communication announced that agents had found the pickup truck and seized 67 pounds of marijuana, Agent Garza requested assistance in locating the Mercury.  Agent Garza himself then spotted the car, which was now traveling slowly west down the highway.  He waited to see whether the car would reach a later checkpoint down that highway; it did not.  Another agent eventually located the car traveling south away from San Antonio.

The Mercury ultimately proved to be registered to the driver of the pickup truck)) and the common law husband of Veronica Reyes)) Rolando Rodriguez.  A search of the Mercury produced a receipt for two-way family radios purchased three days before the incident and a cellular phone registered in the name of Veronica Reyes.  A further search of the truck produced an instruction book for the radios, a cellular phone registered in the name of Roxanne Reyes (Veronica's sister), and one of the two-way radios.  The apparent companion two-way radio was found on the side of the road near where the Mercury was stopped.  Although the timing of the calls was disputed at trial, testimony and phone company records indicated that several calls were made from the phone in the Mercury to the phone in the truck in the two hours before the arrests.

Rolando Rodriguez pleaded guilty to possession of marijuana.  Francisco and Veronica Reyes were convicted in a jury trial.

Because the Reyeses' trial counsel did not object contemporaneously to the district court's questions to the witnesses, we now review the district court's interrogations for plain error.  *See United States v. Saenz*, 134 F.3d 697, 701 (5th Cir. 1998).  "Plain error occurs when the error is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity, or public reputation of judicial proceedings and would result in manifest injustice."  *United States v. Mizell*, 88 F.3d 288, 297 (5th Cir.), *cert. denied*, 519 U.S. 1046, 117 S.Ct. 620, 136 L.Ed.2d 543 (1996) .

It is within the prerogative of a federal judge to manage the pace of a trial, to comment on the evidence, and even to "question witnesses and elicit facts not yet adduced or clarify those previously presented."  *United States v. Williams*, 809 F.2d 1072, 1087 (5th Cir. 1987) (quoting *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979)); *see also* Fed.R.Evid. 614(b) ("The court

may interrogate witnesses, whether called by itself or by a party."). The primary limitation on this judicial investigatory power is that it must be undertaken for the purpose of benefitting the jury in its understanding of the evidence, and the court may not appear to be partial. *See Saenz*, 134 F.3d at 702. A determination on the appearance of partiality is made by reviewing the record in its entirety. *See United States v. Cantu*, 167 F.3d 198, 202 (5th Cir.), *cert. denied sub nom. Lopez Cantu v. United States*, 120 S.Ct. 58, 145 L.Ed.2d 50 (1999). Specifically, "[t]o rise to the level of a constitutional error, the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994).

To facilitate this determination, we have in the past looked to certain factors to assess the propriety of the judicial interrogation. In a "complex or lengthy case with multiple witnesses," or where there is a "need to expedite testimony on certain issues or by certain witnesses," judicial intervention is most appropriate. *Saenz*, 134 F.3d at 703-04. On the other end of the spectrum, as in *United States v. Saenz*, judicial interrogation is least appropriate where the questioning centers on the credibility of crucial witnesses and there is little other evidence to support conviction. *See Saenz*, 134 F.3d at 713; *see also Cantu*, 167 F.3d at 203 (emphasizing the uniqueness of the *Saenz* case).

The instant case contains none of these factors. The Reyeses were convicted following a one day trial, in which seven witnesses for the government testified, and there were no defense witnesses. The issues presented in the trial were neither complex, nor did they implicate decisions on credibility. Instead, the case against the Reyeses consisted entirely of circumstantial evidence. The Government put forth a theory that the numerous pieces of evidence illustrated that the Mercury was acting as

-4-

a "scout" vehicle for the "load" truck containing the marijuana.[1]  The defense, on the other hand, argued that the cars were linked because of the close family ties between the occupants, but that the marijuana belonged to Rodriguez alone, and the Reyeses were on a trip north to deliver a birthday present to Francisco's daughter, doubling back south only because they forgot the gift.

During the trial, the court interjected itself into the questioning of six of the seven witnesses. Often the questioning was lengthy and involved the details of several key pieces of evidence: the walkie-talkies, the cellular phone calls, the alert by Agent Garza's dog, the testing of marijuana samples, and the radio communication of the rancher's identification of the pickup truck.  A substantial portion of the interrogation can only be described as proper clarification))including how the identity of a caller on a cellular phone is established, and the directions each car was driving at any given moment.  Other instances of questioning were collateral to the issues presented in the case))including the procedure for testing drug samples and who had control over the seized evidence,[2] and how the Border Patrol radio communication system works.[3]  Finally, a number of the questioning episodes also presumably favored the defense))including inquiries to two witnesses that highlighted discrepancies in the cellular phone records of incoming and outgoing calls.

The difficulty arises, however, with two particular instances of questioning.  The first episode

---

[1]A "scout" vehicle, as described at trial testimony in this case, is one which precedes a "load" vehicle in transit through checkpoints.  Load vehicles carry the principal shipment of narcotics, whereas scout vehicles either serve as decoys by distracting border agents with a smaller amount of narcotics, or as lookouts by informing the load vehicles when agents are nearby.

[2]There was no allegation of evidence tampering in this case, and all parties conceded that marijuana was found in the pickup.

[3]There was no challenge to the assertion that Agent Garza was alerted to the possibility that the Reyeses may have been implicated via radio communication.

was an interrogation of Agent Garza, in which the district court brought out first that the dog had alerted to the Mercury, and then, more specifically, that dogs may sometimes alert when drugs have once been in the vehicle but no longer are. The second episode was a series of questions put to another agent attempting to link the walkie-talkies found to the receipt in the car and to each other.[4] Such questioning goes beyond mere clarification and into the realm advancing a theory of the case compatible with that of the prosecution)) specifically, that the Mercury was a scout car, and that the walkie-talkies were used in each of the vehicles to communicate with each other. It is of course possible that the Government would have brought out each of these points on its own, but the court's questions had the effect of emphasizing for the jury that the court thought it incredulous both that the dog had alerted falsely and that the walkie-talkie found at the roadside did not belong to the Reyeses. *See Saenz*, 134 F.3d at 706-707 ("The court's questions did not elicit information that the prosecution was likely to have missed. The mere fact that the trial court itself, not the prosecution elicited such damaging information contributed to the perception that the court was helping the government.")

But our inquiry does not end with the propriety of particular questions asked. Even if the implications from the district court's questions regarding the dog alert and the walkie-talkies bolstered the government's theory of the case, we must still look to the cumulative effect of the questioning based on an examination of the entire record. Here, even casting aside the reasons why a dog may alert to a car that does not contain drugs and the possibility of a match between the

---

[4]For example,
> THE COURT: The question then, would be: Why would you buy two radios that didn't have the same frequency?
> THE WITNESS: That's correct, sir.
> THE COURT: That–that wouldn't make any sense, would it?
> THE WITNESS: That wouldn't make any sense.

walkie-talkies, the jury would still be left with the following pieces of evidence: (1) the relationship of the occupants of the truck and the Mercury, (2) the load of marijuana in the truck, (3) the Mercury's failure to reach its stated destination, (4) the presence of both vehicles in an area of repute for drug trafficking, (5) the cellular phone calls between the Mercury and the truck, and (7) the instruction book and receipt for the walkie-talkies. Such circumstantial evidence, all tending to point to the "scout/load" scenario rather than the defense's birthday gift scenario, is itself adequate to support the Reyeses' conviction. In addition, the district court was careful to issue a curative instruction in his introduction of the case that cautioned the jury to disregard any perceived partiality. *See United States v. Wallace*, 32 F.3d 921, 928 (5th Cir. 1994) (holding that a curative instruction may overcome the resulting prejudice from improper commentary by a trial judge).

In sum, while recognizing that any implication by the court that it may favor one theory of the case over another in a case based entirely on circumstantial evidence is potentially highly prejudicial, we cannot say that in this case the prejudice was so pervasive as to deprive the defendants of their constitutional rights.

The Reyeses also advance brief arguments that, first, the evidence against them is not sufficient to support a conviction of conspiracy, and secondly that the second stop of the Mercury was not supported by reasonable articulable suspicion. Both of these arguments are dispensed with easily. A challenge to the sufficiency of evidence is reviewed "in the light most favorable to the jury verdict. It is considered sufficient if a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Martinez*, 190 F.3d 673, 676 (5th Cir. 1999). In addition, we have repeatedly held that circumstantial evidence alone is adequate to support a conviction of conspiracy. *See, e.g., United States v. Soape*, 169 F.3d 257, 264 (5th Cir.), *cert.*

*denied* 527 U.S. 1011, 119 S.Ct. 2353, 144 L.Ed.2d 249 (1999). As discussed above, the evidence in this case is such that a rational trier of fact could infer from the various pieces of circumstantial evidence that the Reyeses intended to join the agreement to traffic marijuana.

The final issue is whether the district court improperly denied the Reyeses' motion to suppress the evidence seized from the Mercury. We review a district court's findings of fact on a motion to suppress for clear error only, and legal conclusions *de novo*. We view the evidence introduced at the suppression hearing in the light most favorable to the prevailing party, here, the prosecution. *See United States v. Ceniceros*, 204 F.3d 581, 584 (5th Cir. 2000). The district court held two hearings on the Reyeses' motion to suppress, and made three separate fact findings which the Reyeses do not now contest. We therefore hold that the district court did not err in finding that the agents had reasonable suspicion to support a stop of the Mercury.

For the foregoing reasons, the convictions of Francisco and Veronica Reyes are AFFIRMED.