**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 99-30761
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus


HENRY L. GREEN, BENJAMIN BLOUNT,
RONALD LEE BLOUNT, JR., JOHNNY GREEN,
RONALD PERNELL GREEN, and COREY LYNDELL BLOUNT,

                                        Defendants-Appellants.

_____

Appeals from the United States District Court
For the Western District of Louisiana

_____

June 11, 2002

Before POLITZ, STEWART, and CLEMENT, Circuit Judges.[*]

CLEMENT, Circuit Judge:

## I. FACTS AND PROCEEDINGS

Defendants engaged in drug trafficking over a period of eight
and a half years in parts of Texas and Louisiana.  Defendants were
indicted on June 11, 1998, on seven counts.  The grand jury
returned a superceding indictment on December 8, 1998, that added
one count of distribution of cocaine base and additional overt acts

_____

[*] Judge Politz was a member of the panel that heard oral arguments.  However, due
to his death on May 25, 2002, he did not participate in this decision.  This case
is being decided by a quorum pursuant to 28 U.S.C. § 46(d) (1996).

1

to the conspiracy charged. The counts in the superceding indictment were: conspiring to possess with intent to distribute over fifty grams of cocaine base between January 1, 1990, and May 7, 1998 (count 1); distribution of cocaine base (counts 2, 3, 5, 6, and 7); use of a communication facility to facilitate or cause controlled substance offenses (count 4); and participation in a continuing criminal enterprise (count 8).

The district court convicted all defendants of count 1.[1] Defendants were sentenced as follows (all terms to run concurrently): Corey Blount to 48 months imprisonment followed by one year supervised release on count 4 and life imprisonment followed by five years supervised release on count 8; Ronald Blount to life followed by ten years supervised release on count 1 and 96 months imprisonment, three years supervised release on count 4; Benjamin Blount to life imprisonment, ten years supervised release on count 1; Henry Green to life imprisonment, ten years supervised release on count 1, 360 months imprisonment, eight years supervised release on count 2, and 360 months imprisonment, eight years supervised release on count 3; Ronald Green to life, ten years supervised release on count 1, 360 months, eight years supervised on count 3, 96 months, one year supervised on count 4, 360 months, eight years supervised on count 5, and life, ten years supervised

_____

[1] Corey Blount's conviction on this charge was dropped because of double jeopardy concerns.

on count 6; and Johnny Green to 600 months, five years supervised on count 1, and 600 months, five years supervised on count 6.

## II. ANALYSIS

### A. *Continuing criminal enterprise*

Corey Blount was convicted on counts 1, 4, and 8. His conspiracy conviction was dismissed on a government motion entered to avoid double jeopardy. Corey challenges his conviction for participating in a continuing criminal enterprise ("CCE") between January 1, 1992, and November 1, 1996, under 21 U.S.C. § 848 (count 8).

A continuing criminal enterprise involves a drug violation that "is a part of a continuing series of violations." Richardson v. U.S., 526 U.S. 813, 815 (1999) (citing § 848(c)). Corey claims that the jury was not properly instructed that each crime in the series is an element of the CCE charge and that all jurors must agree that the defendant committed three specific offenses. According to Richardson, decided after Corey's trial but before sentencing, "a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" 526 U.S. at 815. It is not disputed that in light of Richardson the jury instruction given was in error. It is disputed whether or not the error was harmless.

3

The court gave the jury the standard pre-Richardson Fifth Circuit instruction for defining the elements of a continuing criminal enterprise.[2] Corey did not object at trial because Richardson had not been decided at that time. Once Richardson was decided, Corey filed a motion to dismiss on the grounds that the instruction did not ensure jury unanimity as to which three crimes made up the continuing series. The district court held that the error did not affect Blount's substantial rights and stated that even if it did, it would use its discretion to deny relief under Rule 52(b) of the Federal Rules of Criminal Procedure. It asserted that in view of the overwhelming evidence of his guilt as a leader of a well-organized extensive drug distribution network the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Neder v. United States held that an omission in jury

---

[2]

The jury instruction read:
"First:    That the defendant violated the Controlled Substances Act as charged in Counts 2 through 6 of the superceding indictment;
Second:   That such violations were part of a continuing series of violations, as hereinafter defined;
Third:    That the defendant obtained substantial income or resources from the series of violations; and
Fourth:   That the defendant undertook such violations in concert with five or more other persons with respect to whom the defendant occupied a position of organizer, supervisor or manager. The five other persons need not have acted at the same time or in concert with each other.
A 'continuing series of violations' means at least three violations of the Controlled Substances Act as charged in Counts 2 through 6 of the superseding indictment, and also requires a finding that those violations were connected together as a series of related or ongoing activities as distinguished from isolated and disconnected acts. In this case, a 'continuing series' means at least three of the violations alleged in the superseding indictment."

4

instructions of an essential element of the offense charged is subject to harmless error review. 527 U.S. 1 (1999). Where a court omits an essential element, the conviction is affirmed if it is beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. Id. at 18. United States v. Olano laid out three requirements for plain error review: (1) error and no waiver; (2) plain or obvious error; and (3) error affecting the defendant's substantive rights. 507 U.S. 725, 730-32 (1993). Even if the three requirements are satisfied, the court has the discretion not to correct an issue that does not seriously "affect the fairness, integrity, or public reputation of judicial proceedings." Id. Plain errors are clear and obvious under current law. Id. at 732-34. When Corey was tried and convicted, existing precedent did not require unanimity as to the specific violations constituting the continuing criminal enterprise. At that time, the error was not clear and obvious, but it was clear and obvious at the time of this appeal. When there was no error under the law existing at the time of trial, but plain error at the time of appeal, the plainness prong is satisfied. United States v. Miranda, 248 F.3d 434, 445 (5th Cir. 2001).

Since the jury agreed that Corey committed three specific crimes in the series and the evidence of his guilt was overwhelming, the error here was harmless and did not affect the fairness or integrity of the proceedings. The jury convicted

5

Blount of conspiracy and of count 4, which contained the predicate violations supporting the CCE count. Implicit in the convictions is the jury's unanimous agreement that Blount was guilty of three specific violations in the CCE series.

B. *Apprendi and penalty enhancements for drug quantity*

Defendants claim that the absence of a requirement in the jury instructions on the conspiracy charge that the jury find a specific amount of crack cocaine resulted in Apprendi error. Under this Circuit's interpretation of Apprendi v. New Jersey, 530 U.S. 466 (2000), drug quantities that the government uses to seek penalty enhancements under 21 U.S.C. § 841(b)(1)(A) or (B) must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. United States v. Green, 246 F.3d 433, 436 (5th Cir. 2001). Because defendants raise this issue for the first time on appeal,[3] review is for plain error even though Apprendi was decided after trial. United States v. Meschack, 225 F.3d 556, 575 (5th Cir. 2000); United States v. Rios-Quintero, 204 F.3d 214, 215 (5th Cir. 2000); Johnson v. United States, 520 U.S. 461, 466 (1997).

---

[3] Ronald and Johnny Green argue that they submitted a request for responsive verdicts that constituted a request for the jury to determine specific amounts of cocaine. (No such request is in the record.) In United States v. Candelario, 240 F.3d 1300, 1311-12 (11th Cir. 2001), the court reviewed the Apprendi issue for plain error because, even though defendant objected to the drug amount, he did not raise a constitutional objection on Apprendi grounds. Defendants' requests for responsive verdicts logically fall into this category of objecting but not raising the specific constitutional objection based on Apprendi principles.

6

Though the instruction on the conspiracy charge did not explicitly inform the jury that they had to determine a specific amount, it did require the jury to find three elements beyond a reasonable doubt with respect to each defendant. The instruction concerning the first element required the jury to find each defendant party to an agreement with at least one other person to possess "with intent to distribute cocaine base, 'crack', as charged in the indictment." The indictment stated that each defendant possessed with intent to distribute "over fifty (50) grams of cocaine base or 'crack'" and that the conspiracy involved more than "fifty (50) grams of cocaine base." It also listed overt acts involving well over fifty grams and the government presented testimony that the conspiracy dealt with amounts far exceeding fifty grams.

The error was harmless. Given the reference to the indictment, the jury found the defendants guilty of conspiring to possess with the intent to distribute "over fifty (50) grams of cocaine base," and the record holds more than enough evidence to substantiate the over fifty grams threshold that triggers maximum sentencing pursuant to § 841(b)(1)(A). See Green, 246 F.3d at 437 (holding that the district court's failure to instruct the jury on quantity was harmless, in part, because the testimony regarding quantity was "extensive, detailed, and uncontroverted").

*C. Sequestration of witnesses*

7

Defendants raise two claims concerning witnesses at trial. For both claims, review is for abuse of discretion. The opposing party must demonstrate resulting prejudice to obtain a reversal. United States v. Hickman, 151 F.3d 446, 453 (5th Cir. 1998); United States v. Posada-Rios, 158 F.3d 832, 871 (5th Cir. 1998) (review of the district court's decision to allow the testimony of witnesses despite a violation of Federal Rule of Evidence 615, the rule of sequestration, is for abuse of discretion); Moore v. United States, 598 F.2d 439, 442 (5th Cir. 1979) (review of the district court's conduct at trial, including the examination of witnesses, is for abuse of discretion). The judge abuses his discretion when his behavior is "so prejudicial that it denied the [defendant] a fair, as opposed to a perfect, trial," United States v. Saenz, 134 F.3d 697, 702 (5th Cir. 1998), and the judge's intervention was substantial considering the totality of the circumstances. United States v. Bermea, 30 F.3d 1539, 1569 (5th Cir. 1994).

### 1. Three investigating officers not sequestered

The district court allowed three investigators to sit at counsel table throughout the trial. All three officers testified as fact witnesses concerning the search of the home of Henry Green's parents in January 1996. The officers represented the FBI, the Louisiana State Police, and the Allen Parish Sheriff's Office. Federal Rule of Evidence 615 gives the court discretion to exempt more than one case agent from sequestration if their presence is

8

essential to the presentation of the case. <u>United States v. Alvarado</u>, 647 F.2d 537, 540 (5th Cir. 1981).

The trial court overruled the defendants' objections to the presence of the investigators. The court determined that the investigators' presence was essential to the presentation of the case. The case was complex. The investigation was lengthy, broad geographically, and involved numerous witnesses. The conspiracy was from 1990 to 1998, and occurred throughout Houston, Texas, Oakdale, Louisiana, and surrounding areas. Each investigator represented a different law enforcement entity during the investigation. None of the agencies took part in all aspects of the investigation, and each performed independent investigations. Due to the complexities of the case and the defendants' failure to show how the investigators' presence prejudiced their testimony or that their testimony had a significant impact on the conviction, the district court did not abuse its discretion.

*2. Sequestration of prison witnesses*

Approximately thirty-seven of the government's witnesses were housed together at a prison facility before they testified. The court failed to instruct them not to discuss the case, a violation of Federal Rule of Evidence 615, the rule of sequestration. Defense counsel suggested to the district court that the government witnesses were discussing the substance of their testimony with each other before and after testifying. In response, the district

9

court conducted a thorough examination and found that witnesses kept to themselves concerning the trial. Relying on United States v. Blasco, 702 F.2d 1315, 1326 (5th Cir. 1983), and United States v. Bobo, 586 F.2d 355, 366 (5th Cir. 1978), the district court denied defendants' motions for mistrial. Defendants have not shown any taint by discussions with other witnesses nor any prejudice. Given the thorough investigation and the defendants' failure to bring out any actual harm or prejudice, we do not find abuse of discretion.

*D. Questioning of witness Joseph Reed*

Besides himself, Benjamin Blount introduced one witness in his defense. That witness was Joseph Martin Reed, a member and manager of a band Benjamin played in during the time of the conspiracy. Reed testified that to his knowledge Benjamin never participated in the drug trade and, given their closeness and the amount of time they spent together (allegedly three to four nights a week), he felt that it was impossible for Benjamin to have traded drugs without him knowing. The defense elicited testimony from Reed that he did not do drugs and did not allow band members to drink and smoke when they rode with him to a show. Before Reed left the stand, the court asked him a series of questions that brought out the fact that he did not report income the band received in cash

for tax purposes.[4]

Federal Rule of Evidence 614(b) allows the district court to "interrogate witnesses, whether called by itself or by a party." The judicial investigatory power is to be used to help the jury understand the evidence; the court must be careful not to express a bias or to confuse the roles of the judge and prosecutor. See United States v. Reyes, 227 F.3d 263, 265 (5th Cir. 2000); Saenz, 134 F.3d at 702; Bermea, 30 F.3d at 1569.

Review is for plain error when the defendant fails to object at trial. Saenz, 134 F.3d at 701. Though Benjamin's counsel requested a conference with the judge immediately after Reed was excused, he acknowledged the court's right to examine witnesses and

---

[4]
The court's questions to Mr. Reed:
"Q. Mr. Reed, you indicate that you work 3 to 4 nights a week for this band?
A. Yes, I do, your honor.
Q. You pay the other band members a hundred dollars a night?
A. Yes, I do.
Q. Do you file W-2 forms on them at the end of the year?
A. I do if--like most of my shows are dealing with like--excuse me--church events. If it was something where I got a W-2 form where I had to show, I did, but most of the times, like local, I was paid cash.
Q. Did you report that income and pay tax on it?
A. Some of the ones that I had W-2 on, correct.
Q. You're telling me that only if you got a W-2 from somebody that you played for, that was the only time you ever reported that income?
A. Yes, and--I also had a job, and whenever I got W-2 at the end of the year, I turn it--I file my income tax.
Q. But when you got paid in cash, you didn't report it?
A. No, sir, your honor.
Q. And you didn't make any reports on any of these people that played for you?
A. Uh, uh--
Q. Did you or did you not prepare W-2 forms and send them out to these people at the end of the year?
A. No, sir.
Q. When you went to the horse stalls, did you go look in the haystacks to see if you could find any drugs?
A. No, sir, your honor."

was principally concerned that the jury receive appropriate instructions. There was no objection to the questioning of Reed. The court gave the standard jury instructions, telling the jury: "Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instruction to you on the law, you should disregard anything I may have said during trial in arriving at your own findings as to the facts."

The judge's questioning was negligible, with no cumulative effect. See id. at 699. The judge's only questions were at the end of Reed's testimony and relatively brief. Further, Benjamin's own testimony played a key role in his conviction and the conviction did not hinge on Reed's testimony. The line of questioning does not reach the plain error and abuse of discretion thresholds.

*E. Alleged inaccuracies in the trial transcript*

Johnny, Henry, and Ronald Green claim inaccuracies in the trial transcripts. A court reporter "shall record verbatim by short hand or by mechanical means . . . (1) all proceedings in criminal cases had in open court . . ." The Court Reporter Act, 28 U.S.C. § 753(b) (1970). A criminal defendant has a right to a record on appeal, including a complete transcript of the proceedings at trial. United States v. Selva, 559 F.2d 1303, 1305 (5th Cir. 1977). If the same attorney represents the defendant at

12

trial and on appeal, reversal is required only if the defendant can show a failure to record that results in an undue hardship and prejudices his appeal. However, where the defendant is represented by different attorneys at trial and on appeal, the absence of a substantial and significant portion of the record is sufficient for reversal. See id.

Henry Green alleges twelve errors in the trial transcripts. He is vague as to what the errors are and fails adequately to explain what actually happened and how it differs from the transcripts. His counsel disclaims any responsibility for the validity of the claims. Given the vagueness of the claim and the lack of a substantial effect on the trial, this claim lacks merit.

*F. Whether Ronald Green had three prior convictions*

Ronald Green was sentenced to mandatory life for conspiracy (count 1) and distribution of cocaine base (count 6) pursuant to the recidivist provisions of 21 U.S.C. § 841(b)(1)(A). Under 21 U.S.C. § 841(b)(1)(A), one prior conviction makes the range twenty years to life; two prior convictions make the sentence mandatory life. Prior convictions must be felony drug offenses that are final, i.e., all times for appeal and filing for certiorari have expired. This court reviews the application of sentencing provisions and the sentencing guidelines de novo and the facts supporting those applications for clear error. Posada-Rios, 158 F.3d at 877.

13

Green argues that because the offenses used occurred after the beginning of the conspiracy they are not prior convictions.[5] Because the conspiracy was a continuing offense that began in 1990 and continued until May 1998, see United States v. Miro, 29 F.3d 194, 198 (5th Cir. 1994) and United States v. Garcia Abrego, 141 F.3d 142, 167 (5th Cir. 1998), the offenses can be considered prior and enhance Green's sentence for conspiracy.

Green further argues that the three narcotics convictions the government used to enhance his sentence pursuant to § 841(b) were actually only one offense because they occurred within minutes of each other.  On September 14, 1990, a police officer observed Ronald Green sell crack to individuals in a Ford LTD.  Minutes later Green sold to an undercover officer not related to the persons in the Ford.  Shortly after this second trade another narcotics agent spoke to a "Mr. Caesar" about a trade.  Caesar called Green over to the vehicle to complete the sale.  Green pled guilty to the three counts on June 15, 1992, and was sentenced to six years in prison.

The Fifth Circuit has adopted the reasoning of United States v. Hudspeth, 42 F.3d 1015 (7th Cir. 1994), that separate convictions constitute only one offense when the violations occur simultaneously but more than one when they occur sequentially.

---

[5] His conviction on these offenses occurred after the distribution charged in count 6.  The government concedes that count 6 cannot be enhanced pursuant to § 841(b)(1)(A).

14

<u>United States v. Ressler</u>, 54 F.3d 257, 260 (5th Cir. 1995). <u>United States v. Barr</u> explicitly adopted this test for determining whether two separate convictions constitute a single act of criminality for purposes of 21 U.S.C. § 841(b)(1)(A). 130 F.3d 711 (5th Cir. 1997).

<u>Hudspeth</u> states that "when considering whether multiple convictions arose out of 'separate and distinct criminal episodes,' [the court should look] to the nature of the crimes, the identities of the victims, and the locations." 42 F.3d at 1019. Among other cases, <u>Hudspeth</u> cites <u>United States v. Tisdale</u>, 921 F.2d 1095 (10th Cir. 1990), which held that burglaries of three stores in one shopping mall by one defendant in the same night constituted three separate offenses. The <u>Tisdale</u> court reasoned that "[a]fter the defendant 'successfully completed' burglarizing one business, he was free to leave. The fact that he chose, instead, to burglarize another business is evidence of his intent to engage in a separate criminal episode." 921 F.2d at 1099.

Though the three offenses here occurred within minutes of each other, they are distinct because they were sales to different individuals and each transaction was complete in and of itself. They were only related in that they occurred at the same place within a short period of time and defendant was the seller in all three. We affirm the sentence enhancement on the conspiracy charge.

15

*G. Sufficiency of the evidence*

Defendants' sufficiency of the evidence claims are reviewed under a stricter than usual standard, because none of the defendants renewed their motions for judgment of acquittal at the close of all evidence.[6] <u>United States v. Ruiz</u>, 860 F.2d 615, 617 (5th Cir. 1988). Under the stricter standard, review is for "a manifest miscarriage of justice," which is found if the record is "devoid of evidence pointing to guilt." <u>Id.</u> The evidence is considered in the light most favorable to the government. The jury has responsibility for determining the weight and credibility of testimony and evidence, even from co-conspirators. <u>U.S. v. Garza</u>, 42 F.3d 251, 253 (5th Cir. 1994); <u>U.S. v. Landerman</u>, 109 F.3d 1053, 1068 (5th Cir. 1997).

Having thoroughly reviewed the record and the arguments in the briefs, we determine that no miscarriage of justice occurred here. Given the standard of review and the overwhelming evidence, the sufficiency of the evidence claims should be denied.

*H. Additional claims*

After careful consideration of the record and the briefs, we find no merit in the additional claims raised by the defendants.

### III. CONCLUSION

For all of the foregoing reasons, we find no merit in

---

[6] The district court denied all of the motions for judgment of acquittal made after the government rested.

defendants' contentions on appeal and AFFIRM the sentences imposed by the district court.