United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 8, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————————————

No. 05-30378

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILL E JOHNSON; WALTER SAMUEL

Defendants-Appellants.

———————————————————————————————

Appeals from the United States District Court
for the Western District of Louisiana
No. 5:04-CR-50097

———————————————————————————————

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

A jury convicted Walter Samuel and Will E. Johnson of various drug offenses. Samuel challenges an evidentiary ruling under FED. R. EVID. 404(b) and the denial of his motion for mistrial. Johnson challenges the sufficiency of the evidence and the reasonableness of his sentence. For the reasons that follow, we affirm.

_____

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

## I. FACTS AND PROCEEDINGS

In March and April 2004, with the assistance of an informant, Billy Frank Smith, law enforcement agents began an investigation of Samuel, whom Smith identified as a drug dealer. The agents coordinated a sting operation in which Smith made purchases of cocaine and crack cocaine from Samuel. Under the agents' direction, Smith made two separate controlled purchases. The first transaction occurred on April 20. Smith called Samuel and asked for one half-ounce of crack cocaine. Smith then went to Samuel's residence, where the transaction was completed. While at Samuel's residence, Samuel informed Smith that he was looking for someone new "to cook the crack" because an earlier batch was of poor quality. No one else was present during this transaction. The second transaction occurred on April 29. Smith drove to Samuel's house and encountered Johnson, Samuel's nephew, on the porch. Samuel was not at the residence, and Johnson called Samuel to tell him to return. When Samuel arrived, he first went into the house and then completed the transaction in Smith's car.[1]

Following these transactions, the agents set up a third transaction and also obtained a search warrant for Samuel's premises. On May 6, 2004, Smith went to Samuel's house to deliver the payment for the drugs he was to pick up later in the day. Johnson was also inside the house. Smith testified that he spoke to Samuel about the "bad crack:" "[Samuel] told me that he gonna get a new cook and I will talk to his nephew [Johnson] about trying to find out who was cooking." According to Smith, Johnson was not speaking very much. Smith testified, "He say he just with his uncle, you

---

[1]Smith testified to this account of the second transaction. One of the government agents also testified about what he witnessed, observing Smith and Samuel's house from a distance. The agent only observed Samuel exit the house and direct Smith into his car to complete the transaction. On appeal, Johnson points out these somewhat different accounts, in an apparent attempt to discredit Smith.

know."

Smith called Samuel again that afternoon about the cocaine, and Samuel told Smith that he still had to cook it. The agents decided against completing the third transaction and instead executed the search warrant. When the agents entered the house, they encountered Johnson sitting on the floor of the kitchen. He was wearing an oven mitt on his hand. The agents located both crack cocaine and powder cocaine on the kitchen table, a pot of boiling water on the stove, and a measuring bowl inside of which was water and crack cocaine. In the southeast bedroom, the agents found four grams of powder cocaine on the dresser, $1100 in cash inside a dresser drawer, and two digital scales on the floor beside the bed. At trial, Samuel's girlfriend testified that she had stayed in Samuel's home in February and March of 2004 and that Johnson had slept in the southeast bedroom during that time. The total amount of crack cocaine, termed cocaine base in the indictment, found in the house was approximately 120 grams. The total amount of powder cocaine found in the house was approximately eighteen grams.

Johnson and Samuel were convicted of (1) conspiracy to distribute and to possess with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) possession with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) possession with intent to distribute a detectable amount of cocaine hydrochloride also in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Additionally, Samuel was convicted of distributing (1) on or about April 20, 2004, five or more grams of cocaine base and (2) on or about April 29, five or more grams of cocaine base, both convictions in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The district court sentenced Samuel to 240 months imprisonment. The district court determined Johnson's guideline range to be between 151 and 188

3

months imprisonment but sentenced Johnson only to 144 months.

## II.  DISCUSSION

### A. Walter Samuel

At trial, the government asked Smith when he first met Samuel.  In response, Smith stated, "I met Walter [Samuel] by buying drugs from his workers."  The government continued, "And how long did you buy drugs from his workers?"  Samuel's counsel then objected, arguing that the answer constituted extrinsic evidence of prior bad acts under FED. R. EVID. 404(b) and that pretrial notice had not been provided.  After noting that testimony about the prior drug-dealing relationship had been introduced without objection, the district court  sustained the objection to the follow-up question regarding the length of the relationship.  Samuel's counsel moved for a mistrial, claiming prejudice. The district court denied the motion and addressed the jury, "If I sustain an objection to a question, draw no conclusion from the question itself."

On appeal, Samuel argues that the government's introduction, without prior notice, of extrinsic evidence of prior bad acts in violation of FED. R. EVID. 404(b) warranted the grant of a mistrial.  The denial of a motion for mistrial is reviewed for abuse of discretion.  *United States v. Freeman*, 434 F.3d 369, 375 (5th Cir. 2005).  Generally, evidentiary rulings by the district court also are reviewed for abuse of discretion.  *United States v. Avants*, 367 F.3d 433, 443 (5th Cir. 2004). However, Samuel's counsel did not object to the statement that Samuel contests on appeal—that Smith met Walter when buying drugs from his workers; counsel objected only to the follow-up question, and that objection was sustained.  As a result, review of Smith's response to the first question is for plain error.  *Id*.  Under plain error review, Samuel must show that there was clear or obvious error that affected his substantial rights.  *Id*.  If these factors are established, this court will

4

not exercise its discretion to correct the error "unless the error seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *Id*. (internal quotation omitted).

FED. R. EVID. 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to "prove the character of a person in order to show action in conformity therewith." The rule applies to extrinsic evidence, not intrinsic evidence. *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Generally, evidence is intrinsic when both the charged act and the extraneous act are part of a single criminal episode or are inextricably intertwined. *Id*. In *United States v. Miranda*, this court held that the district court did not abuse its discretion in determining that a witness's testimony about prior drug purchases from the defendant was intrinsic evidence where the testimony was "not submitted to show the defendant's proclivity towards crime, but . . . as background information establishing the connection between a witness and a defendant." 248 F.3d 434, 440–41 (5th Cir. 2001) (citing *United States v. Aleman*, 592 F.2d 881, 884 (5th Cir. 1979)).

In light of *Miranda*, Samuel cannot show that the district court committed plain error. Smith's testimony was background information that established Smith's connection to Samuel. Though Samuel argues that *Miranda* is distinguishable because Samuel's relationship with Smith originated much farther in the past than the relationship at issue in *Miranda*, nothing in *Miranda* suggests that the length of time was a factor under consideration. Samuel also argues that *Miranda* was wrongly decided and should be overturned. This, of course, we cannot do. *See Barber v. Johnson*, 145 F.3d 234, 237 (5th Cir. 1998) (stating that a panel of this court may not overturn the decision of another panel without intervening legislation, a decision by the en banc court, or a decision by the Supreme Court). Additionally, since the district court did not commit error, plain or otherwise, in admitting the intrinsic evidence, Samuel cannot show that the district court's denial of

5

the motion for mistrial was an abuse of discretion.

**B. Will E. Johnson**

**(1) Sufficiency of the Evidence**

Johnson argues that the evidence was insufficient to support his conviction. The parties dispute the applicable standard of review. At trial, Johnson moved for a judgment of acquittal at the close of the government's case, and, though Samuel called a witness, Johnson did not. Johnson did not renew his motion for a judgment of acquittal at the close of all the evidence. On appeal, the government argues that, because Johnson did not renew his motion, this court's review is limited to determining whether there was a "manifest miscarriage of justice." *United States v. Green*, 293 F.3d 886, 895 (5th Cir. 2002) (internal quotation omitted). Johnson recites the standard of review where the motion for the judgment of acquittal was preserved. There is some authority, though it is not directly on point, that, because Johnson did not present any evidence himself, his failure to renew the motion does not constitute a waiver of the original motion. *See United States v. Arias-Diaz*, 497 F.2d 165, 168–69 (5th Cir. 1974) (holding that no waiver occurs where the co-defendant, and not the defendant himself, testifies after the defendant moves for a judgment of acquittal at the close of the government's case). Because we find the evidence was sufficient to support Johnson's conviction under either standard of review, we will assume, without deciding, that Johnson need not have renewed his motion for a judgment of acquittal and that, therefore, the more generous standard of review applies.

Accordingly, our review entails determining "whether any reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt." *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998) (citing *United States v. Alix*, 86

6

F.3d 429, 435 (5th Cir. 1996)). "We consider the evidence in the light most favorable to the government, drawing 'all reasonable inferences and credibility choices made in support of the verdict.'" *Id*. (quoting *United States v. Ivy*, 973 F.2d 1184, 1188 (5th Cir. 1992)). Credibility choices and the weight afforded to particular evidence are within the province of the jury. *Green*, 293 F.3d at 895. However, if the evidence gives equal or nearly-equal circumstantial support to innocence as to guilt, then reversal is required. *Ortega-Reyna*, 148 F.3d at 543.

As previously noted, Johnson was convicted of (1) conspiracy to distribute fifty grams or more of cocaine base; (2) possession with intent to distribute fifty grams or more of cocaine base; and (3) possession with intent to distribute a detectable amount of cocaine hydrochloride. To prove a drug conspiracy, the government must establish beyond a reasonable doubt: "(1) the existence of an agreement between two or more persons to violate federal narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996). The three elements of conspiracy may be inferred from the "development and collocation of the circumstances." *Id*. (internal quotation omitted). To prove possession with intent to distribute, the government must establish "that the defendant (1) knowingly (2) possessed the drug (3) with intent to distribute it." *Id*. Possession can be actual or constructive, and constructive possession need not be exclusive but may be joint. *United States v. Patterson*, 431 F.3d 832, 837 (5th Cir. 2005). Proof of possession generally rests on inference and circumstantial evidence, and when the government has proved conspiracy, the defendant will be deemed to possess the drugs through the co-conspirator's possession. *Gonzales*, 79 F.3d at 423.

We find the evidence sufficient to support Johnson's convictions. Regarding the conspiracy

7

conviction, Johnson was found in the kitchen of Samuel's home wearing an oven mitt, while cocaine was being cooked to fulfill Smith's order. The jury could reasonably have inferred that Johnson knew of and was participating in a conspiracy with Samuel to distribute the drugs being prepared. Additional evidence of Johnson's knowledge and participation in the conspiracy is Smith's testimony that Samuel directed Smith to talk to Johnson about who was cooking the crack and causing its poor quality. Finally, evidence was adduced at trial that, in the southeast bedroom where Johnson was known to sleep, the agents found drugs, a large amount of cash, and two measuring scales; this evidence tends to support Johnson's involvement in drug-related activities. When considering all the evidence, a reasonable jury could have found proof of conspiracy to distribute cocaine base beyond a reasonable doubt.

Regarding the two convictions for possession with intent to distribute, the parties jointly stipulated at trial that approximately 120 grams of cocaine base and eighteen grams of powder cocaine were found in the house. An agent testified that a little over a hundred grams of the cocaine base were found in the kitchen. The jury could reasonably infer that, because Johnson was preparing the cocaine base found in the kitchen, that he possessed it, either actually or constructively. *See Patterson*, 431 F.3d at 836 (stating that possession is constructive where defendant knowingly has ownership or control over the contraband). Because of Johnson's involvement in the conspiracy with Samuel and the large quantity of cocaine base being produced, a reasonable jury could conclude beyond a reasonable doubt not only that Johnson knowingly and jointly possessed the cocaine base but also that he had the intent to distribute it. For similar reasons, the evidence was sufficient for Johnson's conviction for possession with intent to distribute powder cocaine. Powder cocaine was found both in the kitchen near Johnson at the time of the arrest and in Johnson's bedroom; the jury

8

could infer that he knowingly and constructively possessed it. Due to the finding of conspiracy and the total amount of drugs involved, a jury also could conclude beyond a reasonable doubt that Johnson possessed the powder cocaine with intent to distribute it.

**(2) Reasonableness of the Sentence**

Johnson argues that his sentence of 144 months is unreasonable. He concedes that the district court sentenced him below the advisory guideline range but avers that the statutory minimum of 120 months would have accomplished the purposes of the sentencing considerations set forth in 18 U.S.C. § 3553(a). Johnson points out that his criminal history is minimal and that he has no history of violence or drug use. He asks this court to vacate the sentence and remand to the district court with instructions to impose the statutory minimum of ten years. The government does not dispute the reasonableness of the downward variance but contends that the sentence should be affirmed.

Following *United States v. Booker*, 543 U.S. 220 (2005), we review Johnson's sentence for "unreasonableness." *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). *See also United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005). Where the sentence falls outside the applicable guideline range, the district court is required to more thoroughly articulate its reasons under 18 U.S.C. § 3553(a) in order that the reviewing court may determine whether the factors considered support the sentence. *Smith*, 440 F.3d at 707. However, the district court need not engage in a perfunctory recitation of all the § 3553(a) factors. *Id*. A non-guideline sentence will be unreasonable where it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id*. at 708.

This circuit has not yet applied this framework to a situation, like the instant case, where the

9

defendant argues that his sentence was unreasonable because the degree of downward variance was not substantial enough. Nonetheless, we engage in the same essential analysis. *See United States v. Almendariz*, — F.3d — , 2006 WL 1520282, at *5 (5th Cir. 2006) (discussing the standard of review for sentences that "deviate[ ] either above *or below* the relevant Guidelines sentence") (emphasis added).

At sentencing, the district court properly considered Johnson's criminal history and personal characteristics under § 3553(a)(1): Johnson's criminal history is negligible, and, according to Johnson's counsel, drug activities are not typically a part of Johnson's life. Johnson himself stated that he had a GED, two children, and came from a large family. In consideration of § 3553(a)(2)(A), the seriousness of the offense and the just punishment due, the district court replied that Johnson had not thought about the families who were harmed by the drugs that Johnson produced. Also, while the district court did not expressly consider each of the other factors, it did state that it considered the "totality of the circumstances."

Reviewing the record, we do not find that the district court accorded improper weight to or erred in balancing any of the § 3553(a) factors. *See Smith*, 440 F.3d at 708. To the contrary, the court appears to have been persuaded that Johnson's criminal involvement was due in large measure to Samuel's influence and adjusted Johnson's sentence accordingly.[2] In light of these considerations, the district court reasonably sentenced Johnson below the applicable guideline range but also chose not to sentence him at the mandatory minimum due to the invariable harm his actions caused to other families. Accordingly, Johnson's sentence of 144 months is not unreasonable.

---

[2]During his sentencing, Samuel specifically asked for the district court's mercy on Johnson, stating that he felt responsible for Johnson's convictions.

## III. CONCLUSION

The judgment of the district court as to both Samuel and Johnson is AFFIRMED.