**REVISED DECEMBER 20, 2002**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-30984
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


VERSUS


BYRON DUFFAUT, also known as Byron Dufaunt, and KEVIN HUFF,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____


December 3, 2002

Before HIGGINBOTHAM, DUHE, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Byron Duffaut and Kevin Huff were both charged in a three-count indictment with conspiracy, possession with intent to distribute over 50 grams of cocaine base, and possession with the intent to distribute approximately 250 grams of cocaine hydrochloride. A jury returned guilty verdicts against Duffaut and Huff on all counts. Duffaut was sentenced to concurrent 200-month terms of imprisonment, and Huff was sentenced to concurrent 300-month terms of imprisonment. Both Duffaut and Huff filed timely notices of appeal.

## BACKGROUND

The charges against Duffaut and Huff stem from the following events. Acting on a tip from a confidential informant (CI), Drug Enforcement Administration (DEA) agents established surveillance on a black Lincoln Continental parked in front of a Pauger Street residence in New Orleans. The CI informed agents that a black male named "Kevin" would be using this vehicle to transport a large amount of cocaine. The CI further indicated that the Lincoln had a hidden compartment in the front dashboard, and that another individual would actually drive the vehicle while "Kevin" followed in a green Camaro. A computer check of the Lincoln's license plate revealed that the vehicle was registered to Huff. Agents observed Huff exit the Pauger Street residence and enter a green Camaro, where he retrieved a plastic bag that appeared to be containing something. Huff carried the bag to the Lincoln, opened the driver's side door, and sat in that vehicle. At some point,[1] Duffaut came out of the house and was handed "something" by Huff near the Camaro. Duffaut then got in the Lincoln and Huff got in the Camaro, and they drove off in separate directions.

DEA agents followed the Lincoln eastbound on Interstate-10 until it exited the highway and pulled into an Exxon station. There, Duffaut used a public telephone before Huff arrived in the Camaro. Huff, who was now accompanied by his nephew, Jermaine Stovall, gave Duffaut "some type of hand signal." Both vehicles

---

[1] DEA Agent Eric Covell testified on direct examination that Duffaut emerged from the house after Huff got out of the Lincoln. On redirect, however, the Government read from the DEA incident report, which indicated that Duffaut exited the house as Huff was getting into the Lincoln.

then returned to the interstate and traveled eastbound.

When the vehicles reached Slidell, Louisiana, local law enforcement officers, working in tandem with the DEA agents, pulled the Lincoln over for speeding. The Camaro was also stopped. Duffaut stated that he was on his way to the casinos in Mississippi. However, during a pat-down for weapons, it was discovered that Duffaut had no cash or credit cards. Duffaut consented to search the Lincoln, and a drug-sniffing canine alerted to the passenger side of the vehicle. Once inside the Lincoln, the canine began "scratching aggressively" at the air bag compartment. A plastic shopping bag containing a large amount of crack cocaine and a large amount of powder cocaine was found inside the compartment.[2] Duffaut and Huff were subsequently placed under arrest.

While en route to a holding cell, Duffaut told DEA Agent Eric Covell that he wanted to cooperate. Duffaut stated that he had made three prior trips to Houston to deliver drugs, and that he was paid $100 to $500 per trip.

Prior to trial, the Government filed a notice of its intent to introduce evidence of prior bad acts in its case-in-chief against Huff, pursuant to FED. R. EVID. 404(b). In particular, the Government sought to introduce evidence of a 1991 drug conviction, and two drug arrests that occurred in 1994 and 1999, respectively. Huff filed a memorandum opposing the introduction of the prior bad acts evidence. The district court ruled that the 1999 drug arrest was admissible, but denied the Government's request with respect to the 1991 and 1994 offenses.

---

[2] The parties stipulated at trial that the drugs retrieved from the Lincoln were, in fact, cocaine base, totaling 491.4 net grams, and cocaine hydrochloride, totaling 249.5 net grams.

In other pretrial motions, Huff moved to suppress introduction of the seized drugs, arguing that the officers lacked probable cause to stop the vehicles because the alleged traffic violation was fabricated. He also asserted that the officers were required to obtain his, rather than Duffaut's, consent to search the Lincoln since the officers knew he owned the vehicle, and because he was present during the stop. The district court denied the motion.

At trial, the Government called former New Orleans police officer Clinton Hajek for the purpose of introducing Huff's prior 1999 arrest. Hajek testified that, on May 18, 1999, he and his partner stopped a Pontiac because they saw its passenger drinking from an open container. The passenger, identified as Huff, fled and Hajek gave chase. Huff was apprehended and brought back to the Pontiac, which was registered in Huff's name, and drugs were found in the car as well as in Huff's underwear.

Hajek testified that $5,702 in cash was found under the passenger seat of the car, and that a digital scale was discovered in the trunk. A subsequent search of Huff's residence turned up a handgun, vehicle registration documents, a Greyhound bus ticket from Houston to New Orleans in Stovall's name, and numerous telephone records in Huff's name which documented calls between Houston, Slidell, and New Orleans. Hajek acknowledged that the 1999 incident was pending trial.

The Government introduced the physical evidence, as described by Hajek, that was retrieved in connection with the 1999 arrest, including: 1) the drugs seized from the car and from Huff's underwear; 2) the digital scale found in the trunk; 3) the property receipt for the cash; 4) the handgun found at Huff's residence; and, (5) the vehicle registration, travel, and phone documents. The district court permitted the Government to publish this

4

evidence to the jury, and Huff did not renew his 404(b) objection during Hajek's testimony or at the time the physical evidence was offered by the Government. Although the district court did not give a limiting instruction to the jury when the 404(b) evidence was introduced, such an instruction was later included in the jury charge at the conclusion of the trial.

During closing arguments, the prosecutor made the following statements:

> What you all have to decide today is whether or not these two guys are guilty, individually; whether or not they worked together; whether or not they were in possession of the drugs; and whether or not it's right what they did.

> If their behavior or what they did is okay, then they should go free. If having three quarters of a kilogram of crack and powder cocaine is okay, they should go home right now, because they deserve it; if that behavior is acceptable.

> But, I don't think it is. The law says it isn't.

Duffaut objected to the prosecutor's statement regarding his personal belief, which the district court sustained. Shortly thereafter, the prosecutor argued:

> And, that's what this is. From New Orleans to St. Tammany. It doesn't just affect one street and one corner at 2341 Pauger Street. This goes a long way.

> As you heard the expert, Chris Ortiz, talk about the amount, thousands and thousands of hits. That's not just one guy doing his own business in the back of his house, wanting to be left alone. That's on the street, that's one person, two people, three people, four people, family after family, person after person.

5

Duffaut and Huff moved for a mistrial, arguing that the prosecutor's comments were "clearly designed to inflame[]." The district court denied the motion and admonished the jury:

> Ladies and gentlemen, you're here to determine whether there's been a violation of law. It has nothing to do with any lawyer's argument as to what he thinks or she thinks is right or wrong.
>
> So, at this point, . . . I think Counsel is almost finished, but that's your job . . . to apply the law, as I explain it to you, to the facts that you have heard here today and testified to by the witnesses and the evidence that will be brought to you in the jury room. So, you're to determine whether a crime has occurred and whether the government has proven it.
>
> So, as I told you before, what the lawyers say is not evidence. It's their presentation of what the evidence is, but their personal opinion as to whether something was proven or whether it's right or wrong is not significant to you.

Later, when recounting the sequence of events, the prosecutor indicated that the DEA agents saw Huff and Duffaut talking outside the house on Pauger while Huff was holding the plastic bag.

> Mr. Huff has the bag. Ms. Jusselin says that [Duffaut] is an unwitting and unknowing "mule."
>
> Kevin Huff is standing there in front of him with the bag.

Duffaut again objected, arguing that the prosecutor's statements were unsupported by the trial testimony. The district court overruled the objection, stating that "the jury can remember." The prosecutor continued:

6

> He's standing there with the bag. Kevin Huff
> is not hiding it. He didn't do it outside of
> Mr. Duffaut's presence. He didn't come there
> with the car. He's standing out front, Kevin
> Huff has got the bag in his hand, standing
> there. Byron Duffaut is standing right next
> to him.

During deliberations, the jury sent out the following note:

> Is there any actual testimony by any of the
> witnesses that place both defendants outside
> the cars with the bag at the same time?

The district court instructed the jury to rely upon its recollection of the testimony as presented at trial. The jury subsequently returned guilty verdicts against Duffaut and Huff on all counts.

Duffaut was sentenced to concurrent 200-month terms of imprisonment. Prior to trial, the Government filed a Bill of Information to establish that Huff pleaded guilty to possession of crack cocaine in 1991. Huff filed written objections. At sentencing, Huff's 1991 prior felony drug conviction was proved up by the Government for purposes of increasing Huff's minimum sentence to 20 years of imprisonment, pursuant to § 841(b)(1)(A). Huff argued that the prior guilty plea conviction had been expunged and could therefore not be used to enhance his sentence. The objection was overruled, and Huff was sentenced to concurrent 300-month terms of imprisonment. Duffaut and Huff both filed timely notices of appeal. On appeal, Huff argues that the district court erred in denying his motion to suppress, that the district court committed plain error in admitting Huff's prior drug arrests, and

that the district court improperly enhanced Huff's sentence. Both Duffaut and Huff also appeal claiming that the prosecutor's remarks during closing arguments rendered their trial fundamentally unfair.

**DISCUSSION**

<u>Did the district court err in denying Huff's motion to suppress?</u>

Huff argues that the district court erred in denying his motion to suppress. He contends that the search of the Lincoln was illegal since the officers failed to obtain his consent, even though they knew Huff owned the vehicle and that he was "being detained nearby." Alternatively, he asserts that both he and Duffaut were illegally detained and that Duffaut's consent to the search was coerced because the officer retained Duffaut's license and registration when asking for his permission to search the Lincoln.

In reviewing a district court's decision on a motion to suppress, this court reviews questions of law *de novo*, "but questions of fact are accepted unless the district court's findings were clearly erroneous, or influenced by an incorrect view of the law." **United States v. Gonzales**, 79 F.3d 413, 419 (5th Cir. 1996). The evidence is viewed in the light most favorable to the prevailing party, unless this view is inconsistent with the district court's findings or is clearly erroneous based on the evidence as a whole. **Id.** A factual finding is not clearly erroneous if it is "plausible in the light of the record as a

8

whole." **United States v. Edwards**, 65 F.3d 430, 432 (5th Cir. 1995).

The Fourth Amendment prohibition against unreasonable searches and seizures extends to vehicle stops and temporary detainment of a vehicle's occupants. **United States v. Shabazz**, 993 F.2d 431, 434 (5th Cir. 1993). Once a dog has alerted to the presence of narcotics, agents have sufficient probable cause to conduct a search of the vehicle. **United States v. Seals**, 987 F.2d 1102, 1106-07 (5th Cir. 1993); **United States v. Dovali-Avila**, 895 F.2d 206, 207 (5th Cir. 1990).

Huff came under investigation when the CI advised the DEA agents that Huff would be transporting a large amount of cocaine to Slidell in a black Lincoln Continental. The CI further indicated that another individual would actually drive the Lincoln while Huff followed in his Camaro. This information, coupled with the corroborating observations made by the agents, supported the stops of the vehicles and the detention of Huff and Duffaut pending the officers' investigation. See **United States v. Holloway**, 962 F.2d 451, 459 & n.23 (5th Cir. 1992) (finding that a tip from a confidential informant which is sufficiently corroborated may furnish the requisite reasonable suspicion to make an investigatory stop).

Shortly after Duffaut was pulled over, officers conducted a free-air search of the Lincoln by walking around it with a drug-

9

sniffing dog.  Duffaut's consent was not needed to perform this free-air search.  **_United States v. Hernandez_**, 976 F.2d 929, 930 (5th Cir. 1992) (holding that a canine sniff of the exterior of a vehicle does not constitute a search within the Fourth Amendment). Once the canine alerted to the passenger-side door, the officers had probable cause to search the car.  **_Dovali-Avila_**, 895 F.2d at 207 (finding that a canine alert is sufficient to create probable cause to conduct a warrantless vehicle search).  Accordingly, neither Duffaut's nor Huff's consent to search the Lincoln was required in this case.  Huff, therefore, has failed to demonstrate that the district court erred in denying his motion to suppress.

Did the district court err in admitting Huff's prior drug arrest?

Huff argues that the district court abused its discretion in admitting evidence of his prior 1999 drug arrest.  In particular, he contends that the admission of the physical evidence was cumulative and unduly prejudicial.  Huff asserts that, absent the admission of the prior arrest evidence, there was insufficient evidence to support his convictions on the instant charges.

Although both Huff and the Government state that the applicable standard of review is for abuse of discretion, it is not.  Though Huff filed a pretrial objection to the Government's notice of intent to use the 1999 arrest, he failed to renew his objection at trial to the admission of both the testimonial and physical Rule 404(b) evidence.  Therefore, the district court's

10

admission of this evidence is subject to plain-error review. *United States v. Graves*, 5 F.3d 1546, 1551 (5th Cir. 1993) (holding that where appellant failed to renew an objection made by motion in limine before the disputed evidence was introduced at trial, review is for plain error); FED. R. EVID. 103(d). To demonstrate plain error, an appellant must show clear or obvious error that affects his substantial rights; if he does, this court has discretion to correct a forfeited error that seriously affects the fairness, integrity, or public reputation of judicial proceedings, but is not required to do so. *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc).

Rule 404(b) precludes the admission of evidence "of other crimes, wrong doings, or acts . . . to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ..." This court has established a two-part test to determine the admissibility of Rule 404(b) evidence. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). The extrinsic-offense evidence must (1) be relevant to an issue other than the defendant's character, and (2) must possess probative value which is not outweighed by undue prejudice. *United States v. Bentley-Smith*, 2 F.3d 1368, 1377 & n.11 (5th Cir. 1993).

11

Similarity of the extrinsic offense to the offense charged is the standard by which relevancy is measured under Rule 404(b). *United States v. Gordon*, 780 F.2d 1165, 1173 (5th Cir. 1986). If offered to show intent, relevancy of the extrinsic offense is determined by comparing it to the state of mind of the defendant in perpetrating the respective offenses. *Id.* "The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." *Id.*

By pleading not guilty, Huff placed his intent at issue. *United States v. Chavez*, 119 F.3d 342, 346 (5th Cir. 1997). Accordingly, Huff's 1999 drug arrest was relevant under Rule 404(b) because it was highly probative of Huff's knowledge and intent to commit the charged offenses. *Id.*; *United States v. Gadison*, 8 F.3d 186, 191-92 (5th Cir. 1993) (finding that a prior conviction for possession of cocaine was admissible because it was probative of the defendant's intent in charged offense of conspiracy to distribute cocaine). However, rather than introducing evidence sufficient to merely establish the prior drug arrest, Huff points out that the Government elicited detailed testimony from the arresting officer, including facts unrelated to the charged offenses. In addition, the Government introduced and published to the jury the physical evidence collected for the prior arrest, including the seized drugs, the digital scale found in the trunk,

12

and the handgun discovered at Huff's residence. Huff argues that the prejudicial effect of this evidence outweighs its probative value. The district court, however, issued a limiting instruction to the jury regarding this evidence stating:

> You have heard evidence of acts which may be similar to those charged in the Indictment, but which were committed on other occasions. You must not consider any of this evidence in deciding if the Defendant committed the acts charged in the Indictment. However, you may consider this evidence for other very limited purposes.
> If you find beyond a reasonable doubt, from other evidence in this case, that the Defendant did commit the acts charged in the Indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine:
> Number one, whether the Defendant had the state of mind or intent necessary to commit the crimes charged in the indictment . . . .

R. 4, 290-91.[3] As the district court issued a limiting instruction as to the evidence, we find that the court did not commit plain error in admitting the evidence. *See United States v. Willis*, 6 F.3d 257, 262 (5th Cir. 1993) (stating that "[t]he danger of unfair prejudice to [the defendant] was minimized by the district court's careful instructions to the jury, which made it clear that the prior convictions could not be considered unless and until the jury first found that [the defendant] had participated in the charged acts, and, even then, could be considered only for the purpose of determining whether [the defendant] had the state of mind or intent

---

[3]The district court also instructed that the evidence could be considered to determine motive or opportunity to commit the crime, whether the Defendant acted according to a plan, or whether the Defendant committed the acts accused of by accident or mistake.

necessary to commit the crime . . . ."); *see also* **United States v. Leahy**, 82 F.3d 624, 637 (5th Cir. 1996) (noting that though some danger of prejudice is always present, "exclusion of extrinsic evidence based on its prejudicial effect should occur only sparingly").

Did the district court improperly enhance Huff's sentence?

Huff next argues that the district court erred by enhancing his sentence based on his 1991 guilty plea conviction. Because the 1991 conviction had no impact on Huff's sentence, the issue is irrelevant.

Huff's presentence report (PSR) did not include the 1991 conviction in its criminal history point calculation for purposes of determining Huff's guideline sentencing range of 262-327 months. As noted by the Government, the 1991 conviction was merely used to increase Huff's minimum statutory sentence to 20 years, pursuant to § 841(b)(1)(A). Because the 1991 conviction did not factor into the PSR's guideline calculation, and as Huff's sentencing range fell above the 20-year statutory minimum, we reject his argument and affirm the district court's decision.

Did the prosecutor's closing remarks prejudice Duffaut's and Huff's substantive rights?

As his sole issue on appeal, Duffaut argues that the prosecutor's remarks at closing were improper because the prosecutor: 1) interjected his personal opinion by stating he did

not believe that having three quarters of a kilogram of crack and powder cocaine was "okay," 2) attempted to inflame the jury by appealing to their community conscience, and 3) mischaracterized the evidence by stating that Duffaut and Huff were standing next to each other while Huff held "the bag." Duffaut contends that he was denied a fair trial as a result of these remarks. Huff raises the same issue in his brief, adopting by reference Duffaut's argument in its entirety pursuant to FED. R. APP. P. 28(I).

Applying a two-step analysis to charges of prosecutorial misconduct, this court decides: 1) whether the prosecutor's comments were improper, and 2) if the comments were improper, whether they prejudiced the defendant's substantive rights. **United States v. Lankford**, 196 F.3d 563, 574 (5th Cir. 1999). Regarding the second prong, this court considers 1) the magnitude of the statement's prejudice, 2) the effect of any cautionary instructions given, and 3) the strength of the evidence of the defendant's guilt. **Id.**

Here, the prosecutor's comments were arguably designed to call on the jurors to act as the conscience of the community. On the whole, the prosecutor's comments regarding drug distribution affecting "family after family" and "person after person" were relatively benign, and, a prosecutor may "'appeal to the jury to act as the conscience of the community[,]'" so long as the comments are not "'calculated to inflame[.]'" **United States v. Brown**, 887

15

F.2d 537, 542 (5th Cir. 1989)(citation omitted). As for whether the prosecutor's statement concerning his personal belief was improper, any prejudice was remedied by the district court issuing a contemporaneous curative instruction. The essence of this instruction was also repeated to the jury at the conclusion of the trial.

As for Duffaut and Huff's argument that the prosecutor mischaracterized the evidence, the appellants rely in part on the fact that the jury issued questions to the district court regarding whether there was any actual testimony by any of the witnesses that placed both of the defendants outside the cars with the bag at the same time. However, the jury's inquiry whether there was any evidence that placed Duffaut and Huff together with the bag does not indicate that they were swayed by the prosecutor's characterization of the evidence, and, even if the jury believed the prosecutor's statement that Duffaut and Huff were together with the bag, this fact would not have appreciably tipped the balance of the evidence. Contrary to Duffaut's argument, the jury could have inferred Duffaut's knowledge of the drugs based on his post-arrest confession concerning his three prior drug deliveries to Houston. Also, the jury was presented with evidence that Huff transferred a plastic bag into the car that was then driven by Duffaut and, when pulled over, police officers recovered a plastic bag from the car Duffaut was driving containing narcotics. Whether Huff was holding the bag while talking to Duffaut would not have significantly

16

altered the evidence underlying the convictions. For these reasons, the appellants' prosecutorial misconduct argument is unavailing and we affirm the jury's conviction.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court did not err in denying Huff's motion to suppress, in admitting evidence of Huff's prior drug arrest, or in enhancing Huff's sentence. We also conclude that the prosecutor's closing remarks did not prejudice Huff and Duffaut's substantive rights. We therefore AFFIRM Huff and Duffaut's conviction.

**AFFIRMED.**