United States Court of Appeals
Fifth Circuit

**F I L E D**

June 21, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 03-60824

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ELI "TOM" ORR,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Northern District of Mississippi
(1:03-CR-35)**

Before WIENER, BARKSDALE, AND DENNIS, Circuit Judges.

PER CURIAM:[*]

Eli "Tom" Orr was found guilty by a jury of two counts of distribution of in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a) and (b)(1)(A), and of conspiracy to distribute in excess of 500 grams of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a), (b)(1)(B) and 846. Pursuant to 21 U.S.C. §§ 841 and 851, and because of prior drug convictions, Orr was sentenced to life imprisonment. Orr appeals both his conviction and sentence, raising 14 issues. The primary claims

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

are: (1) the district court erred in denying Orr's motion to suppress; (2) the Government engaged in misconduct through both failure to produce grand jury testimony and closing argument; (3) the district court erred by instructing the jury it had to find the conspiracy involved cocaine base, rather than cocaine as charged in the indictment; (4) the district court erred in enhancing Orr's sentence based on prior convictions; and (5) Orr's sentence is unconstitutional under *United States v. Booker*, 125 S. Ct. 738 (2005) (federal sentencing guidelines only advisory). **AFFIRMED.**

## I.

On 8 March 2003, at approximately 12:30 a.m., Orr was a passenger in his automobile parked in a handicapped parking space outside a convenience store in Memphis, Tennessee. The automobile had no handicapped license plate, sticker, or placard. Because being so parked is a traffic violation in Memphis, Officer Brown approached Glory Howard, who was in the driver's seat, and asked for her driver's license, which she could not produce. Instead, she presented a chain store identification card which contained the driver's license number.

After a computer check revealed Howard's Mississippi driver's license was suspended, Officer Brown asked Howard to exit the automobile. As part of a detention procedure, Officer Brown patted Howard down; when doing so, he felt brick-like objects in the jacket she was wearing. Howard denied knowledge of the jacket's

2

contents, claiming the jacket was Orr's.  After Howard removed the jacket, Officer Brown placed it on the trunk of the vehicle.

Orr exited the vehicle and approached Officer Brown, who instructed him to put his hands on the trunk.  While Officer Brown was attempting to pat Orr down, he swung at the Officer, grazing his head, grabbed the jacket from the trunk of the automobile and ran.  After a chase, Orr was captured and the jacket retrieved.  Four bricks of powdered cocaine were removed from its lining, and $1,820 was seized from Orr.

Orr was charged with two counts of distribution of in excess of 50 grams of cocaine base; he and Howard were charged with one count of conspiracy to distribute in excess of 500 grams of cocaine hydrochloride.  On the first day of trial, Howard pled guilty.

At Orr's trial, Howard testified about:  traveling with Orr to Chicago to pick up drugs, intending to transport them to Houston, Mississippi; placing the cocaine in Orr's jacket; and the events in the Memphis parking lot.  In addition, Littleton Howard and Willie Ewell testified about their cocaine dealings with Orr.  Both had pled guilty to drug violations and testified in the hope of lower sentences.  Ewell testified to Orr's "fronting" him crack cocaine, for which Orr was later paid.  Several such transactions had been recorded with both audio and video recording devices.  The tapes and corresponding transcripts for one of the transactions were admitted in evidence.  Officers testified to surveillance of the other recorded transactions.

A jury found Orr guilty on all three counts. He was sentenced, *inter alia,* to imprisonment for life on each count, to run concurrently.

## II.

Orr's 14 issues are addressed below. Each is without merit.

### A.

Orr challenges the denial of his motion to suppress evidence obtained from the stop and detention of Howard. An evidentiary hearing was held in June 2003, shortly before trial. For the motion, the district court's factual findings are reviewed only for clear error; its legal conclusions, *de novo*. *E.g.*, **United States v. Burbridge**, 252 F.3d 775, 777 (5th Cir. 2001). The evidence is viewed in the light most favorable to the party prevailing in district court. **Id.**

Orr contends: there was no moving violation, only a parking violation, which did not require production of a driver's license; Officer Brown had no probable cause to arrest or detain Howard for operating a vehicle with a suspended license, but instead, should have cited the vehicle and ended the detention; because there was no probable cause to arrest, searching Howard violated the Fourth Amendment; and, therefore, all evidence obtained during and after the search was fruit of the poisonous tree.

Officer Brown was not required to simply issue a parking citation and end Howard's detention after discovering she had a

4

suspended license.  Upon the Officer's making that finding, he had the authority to arrest her for driving with a suspended license, because, *inter alia,* he had witnessed her attempting to back out of the handicapped parking space.  The district court did not err in concluding there was probable cause to arrest and search Howard. *See **United States v. Robinson***, 414 U.S. 218, 225, 236 (1973). Therefore, Orr's suppression contention is without merit.

B.

Consistent with his objection at trial, Orr asserts that, because the Government failed to prove the chain of custody, the district court should not have admitted into evidence drugs either found in the jacket Howard was wearing or received from Ewell.  The admission of evidence is reviewed for abuse of discretion. ***United States v. Dixon***, 132 F.3d 192, 197 (5th Cir. 1997), *cert. denied*, 523 U.S. 1096 (1998).  "[A] 'break in the chain of custody simply goes to the weight of the evidence, not its admissibility'". ***Id.*** (quoting ***United States v. Sparks***, 2 F.3d 574, 582 (5th Cir. 1993), *cert. denied*, 510 U.S. 1080 (1994)).  In short, the Government need only make a *prima facie* showing of authenticity.  *See **Sparks***, 2 F.3d at 582.

1.

Orr maintains:  the only evidence of the two surveilled transactions involving Ewell is the account given by Ewell, a paid informant; the chain of custody was broken; and the tape recording

5

of these transactions is unreliable because Ewell gave the tape to the Agents.

Ewell testified that Orr delivered the cocaine base to him. Ewell gave the substance from the first transaction to Officer Howell, after initialing its packaging; that Officer gave the substance to Special Agent Douglas. Ewell gave the substance from the second transaction to Special Agent Douglas.

Special Agent Douglas forwarded the substances from both transactions to the DEA lab in Dallas, Texas, after the substances field tested positive for cocaine. A DEA forensic chemist testified the evidence was sealed when she received it. The substances contained cocaine base. The first weighed 97.2 grams; the second, 89 grams.

The Government made a *prima facie* showing of authenticity, and the district court did not err in admitting the evidence. Obviously, Orr's objection to Ewell's credibility was a question for the jury to weigh. *See **id.***

2.

For the conspiracy count, concerning drugs seized from the jacket Howard was wearing, Orr asserts: Officer Brown neither maintained custody of the substance nor field tested it to confirm it was cocaine; and, after Officer Cooper took possession of the substance from Officer Brown, he failed to initial the receipt for it on providing it to the property room. Thus, Orr asserts Officer

6

Cooper did not have custody of the contraband. Needless to say, the mere failure to initial evidence does not render it inadmissible. *Dixon*, 132 F.3d at 197 n.6.

Orr contends that, despite Howard's identification at trial of the contraband photographed on the trunk of his automobile as the cocaine she transported from Chicago, Officer Cooper could not confirm these packages were the same as those in photographs from the crime lab. Orr notes that the packages did not all look the same and were not packaged the same way and contends, without citation or support, that subsequent to this case, the property room officer was convicted of theft of drugs from the property room. He also cites to a property tag, which has not been included in the record on appeal.

Officer Cooper testified he took custody of the jacket and cocaine at the scene, took the evidence to the property room, and witnessed a member of the organized crime unit initial the evidence as it was sealed in the property room. A Memphis Police Detective testified he retrieved the cocaine from the property room and delivered it to Special Agent Douglas. Special Agent Douglas testified he received the cocaine from the Detective and prepared a receipt, then delivered it to an Agent, who delivered it to the Tupelo Police Department crime laboratory. An employee of that laboratory testified she tested the substance from the sealed package and determined it contained cocaine. The total weight of

7

the bricks, without packaging, was 2,000.8 grams.  The Government made a *prima facie* showing of authenticity.  Accordingly, the district court did not abuse its discretion in admitting the evidence over Orr's objection.  *See **id.** at 197 & n.6.*

### C.

 Citing 18 U.S.C. § 201(c)(3) (providing penalties for bribery of, *inter alia*, witnesses), Orr maintains Ewell's testimony was illegal because:  it resulted from a plea offer; and Ewell was paid $1,000 by the Government to complete "the transactions".  It does not appear this issue was raised in district court.  In any event, a favorable plea agreement in exchange for truthful testimony does not violate § 201.  *See **United States v. Haese***, 162 F.3d 359, 368 (5th Cir. 1998), *cert. denied*, 526 U.S. 1138 (1999).  And, § 201 is not violated "when prosecutors compensate informants for their cooperation".  **United States v. Barnett**, 197 F.3d 138, 145 (5th Cir. 1999), *cert. denied*, 529 U.S. 1111 (2000).

### D.

According to Orr, the district court lacked jurisdiction because the Government did not establish a nexus between the offense and interstate commerce.  Congress' regulation of controlled substance offenses under 21 U.S.C. §§ 841 and 846 is permissible under the Commerce Clause and showing an interstate commerce nexus is not required.  *See **United States v. Lopez***, 459 F.2d 949, 953 (5th Cir.), *cert. denied*, 409 U.S. 878 (1972).

E.

Orr contends the Government engaged in misconduct because it: withheld transcripts of grand-jury testimony by Special Agent Douglas, Officer Blaylock, and "others known and unknown"; and, during closing argument, stated neither the drugs nor Orr "will []ever be on the street again", and, if the jury failed to find Orr guilty, it "deserved what [it] got".

1.

Under the Jencks Act, the Government must produce, upon a defendant's motion and after a witness has testified on direct examination, any statement in its possession "which relates to the subject matter as to which the witness has testified". 18 U.S.C. § 3500(b). Prior to trial, Orr requested production of the grand jury testimony of "any person whom the [Government] intends to call at trial". The Government did not produce such testimony by Special Agent Douglas or Officer Blaylock. (Orr does not identify any others whose testimony may not have been produced. His request for a transcript of the grand jury proceedings for use with this appeal was denied by the district court because Orr failed to articulate a particular need for it.)

The Government maintains that, even though it did not produce this material, there was no Jencks Act violation because Orr did not request the material at trial at the conclusion of the direct examination of Special Agent Douglas or Officer Blaylock. The Government also asserts that Orr waived this issue by failing to

9

either pursue discovery during trial or alert the district court to the issue.

In any event, Orr fails to make the requisite showing. He has neither contended, nor shown, that the failure to produce the transcripts "had a substantial influence on the judgment" or that any witness' testimony at trial differed substantially from that before the grand jury. *United States v. Montgomery*, 210 F.3d 446, 451–52 (5th Cir. 2000).

2.

The claimed misconduct during closing argument is reviewed to determine: "1) whether the prosecutor's comments were improper, and 2) if [they] were ..., whether they prejudiced the defendant's substantive rights". *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002) (citation omitted). In deciding whether such rights were affected, we consider: the degree of prejudice from the statement; whether a cautionary instruction was rendered and what effect it had; and the strength of the Government's case. *Id.* at 210–11.

a.

The Government contends it has been unable to locate in the record where the jury was told that neither the drugs nor Orr would be on the street again. In his opening brief, Orr does not provide the requisite record citations for the allegedly improper remarks; in his reply brief, he does not respond to this noted omission.

10

Nor do we find the alleged remarks. Given Orr's failure to show the comment was made, this issue is without merit.

b.

The Government commented twice on society reaping what it sows, to which Orr objected. Although the district court overruled the first objection, it sustained the second to the statement that, "if you can sit there and listen to that and then vote not guilty, then, indeed, the people of north Mississippi are going to get just the kind of criminals we deserve". The district court admonished the jury to disregard the statement.

The comments were improper. Given, however, the curative instruction, the substantial evidence of Orr's guilt, and his failure to contend, or show, his substantive rights were prejudiced, there is no reversible error. *See id.*

F.

According to Orr, the district court failed to instruct the jury on the quantity of drugs it must find for conviction on counts one and two (distribution of cocaine base). For each count, however, the jury was instructed that the Government had to prove beyond a reasonable doubt that the substance was cocaine base and "weighed in excess of 50 grams" (as charged in the indictment).

G.

In count three, Orr was charged with conspiracy with Howard to distribute, and possess with intent to distribute, cocaine. Orr

claims for the first time on appeal that the district court erred in its jury instruction for that count. Therefore, review is only for plain error. FED. R. CRIM. P. 52(b); *see* **United States v. Partida**, 385 F.3d 546 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 1616 (2005). We may correct such forfeited error only if Orr shows a plain (clear or obvious) error that affected his substantial rights. FED. R. CRIM. P. 52(b); *e.g.*, **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995) (citing **United States v. Olano**, 507 U.S. 725 (1993)). Even then, whether to correct the forfeited error is within our discretion; generally, we will not do so unless "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings'". **Olano**, 507 U.S. at 736 (citation omitted).

The district court instructed that the jury had to find two or more persons agreed to distribute, or possess with intent to distribute, more than 500 grams of *cocaine base*, rather than *cocaine*, as charged in the indictment. Orr claims reversible plain error, asserting the evidence was insufficient to establish the offense involved more than 500 grams of cocaine base. Therefore, he argues there was no conviction, or, alternatively, that any conviction was for the lowest quantity of the default drug (marihuana), which would result in a one to seven month sentence. Orr contends: there is a reasonable likelihood the jury followed

12

the court's instructions; and this was not an isolated and inadvertent error, as the Government contends.

The Government responds: it was an inadvertent misstatement; throughout trial, all other references to the conspiracy count were to cocaine; it was clear to everyone that this was the charge; the evidence supporting Orr's conviction on this count was overwhelming; the jury instructions as a whole correctly stated the law; and Orr's substantial rights were not affected, given the overwhelming evidence against him.

Pursuant to the Fifth Amendment, Orr had the right to be tried only on the charges contained in the indictment. *Partida*, 385 F.3d at 557. "[A] constructive amendment of the indictment is a reversible error *per se* if there has been a modification at trial of the elements of the crime charged". *United States v. Nunez*, 180 F.3d 227, 230-31 (5th Cir. 1999) (internal quotation omitted). An indictment is constructively amended when "the jury is permitted to convict a defendant based on an alternative basis permitted by the statute, but not charged in the indictment". *Partida*, 385 F.3d at 557. Not all variances between an indictment and the jury instructions are constructive amendments, however; some are harmless error. *Nunez*, 180 F.3d at 231; *see also* FED. R. CRIM. P. 52(a). In reviewing jury instructions, we "rarely will reverse a conviction based on a district court's insignificant slip of the tongue". *United States v. Phipps*, 319 F.3d 177, 190 (5th Cir.

13

2003) (finding no reversible plain error where one reference was made to proof by a preponderance of the evidence). "[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it". *Id.* (quoting ***Victor v. Nebraska***, 511 U.S. 1, 6 (1994)) (emphasis in original).

Because the Government sought enhanced penalties against Orr, based on the amount of drugs involved in the offense, the quantity was required to be charged in the indictment and proved beyond a reasonable doubt. *See **United States v. Doggett***, 230 F.3d 160, 164–65 (5th Cir. 2000), *cert. denied*, 531 U.S. 1177 (2001). Orr was charged, in part, with conspiracy to distribute, and to possess with intent to distribute, in excess of 500 grams of cocaine. The district court read this portion of the indictment to the jury, but, as noted, also charged the jury that it had to find beyond a reasonable doubt "that two or more persons made an agreement to commit the crime of distributing or possessing with intent to distribute cocaine base, a controlled substance" and "that the substance weighed in excess of 500 grams".

There is no reasonable likelihood the jury applied the incorrect instruction in an unconstitutional manner. *See **Phipps***, 319 F.3d at 190. The error did not affect Orr's substantial rights. *See **Olano***, 507 U.S. at 736. Accordingly, there was no reversible plain error.

14

H.

Orr contends use of a general verdict form deprived him of the right to a unanimous verdict given the claimed ambiguity regarding both whether he was convicted of an offense involving cocaine or cocaine base and the jury charge for the conspiracy count. Orr did not object at trial, however, to use of the form. Our review, therefore, is only for plain error. *Partida*, 385 F.3d at 554.

General verdict forms are preferred by our court. *See **U.S. v. McCracken***, 488 F.2d 406, 418 (5th Cir. 1974); ***U.S. v. James***, 432 F.2d 303, 307 (5th Cir. 1970), *cert. denied*, 403 U.S. 906 (1971). Use of the form was not error, much less reversible plain error.

I.

Orr asserts he entered into an agreement in 1992 with the State and United States to cooperate in solving a homicide in exchange for then-pending charges being dismissed. He maintains: the agreement prevented the Government from using for enhancement purposes the offenses it agreed not to prosecute; and the Government is barred by *res judicata* from violating the agreement.

The only evidence Orr submitted of such an agreement is an unexecuted counteroffer from the United States Attorney's office; a state court motion to dismiss an indictment based on this alleged agreement; and a state court transcript referring to a plea agreement with different terms. Because the alleged agreement is not signed by the parties and was conditioned on certain events

15

which Orr has not shown occurred, he has not shown there is any agreement. (Following oral argument here, Orr filed a motion to place under seal this unexecuted agreement, which was attached as an exhibit to his brief. Because that document was attached to Orr's original brief, and was, therefore, already in the public record, his motion is **DENIED**.)

## J.

Orr next claims the district court erred in sentencing him as a career offender pursuant to U.S.S.G. § 4B1.1(a), which provides:

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Orr, however, was sentenced, based on prior convictions, under the enhancement provisions provided by 21 U.S.C. § 841 and the notice provisions of 21 U.S.C. § 851. Section 841, in relevant part, requires a mandatory term of life imprisonment upon a third conviction following two prior drug felony convictions. The Government's notice of intent to seek an enhanced sentence, required by § 851, and an addendum to that notice cited five prior controlled substance offenses: (1) a 15 May 1980 conviction for unlawful possession of a controlled substance; (2) a 13 April 1985 conviction for delivery of marihuana; (3) a 12 October 1993

16

conviction for the sale of cocaine; (4) a 15 May 1995 conviction for possession with intent to sell a schedule II controlled substance; and (5) a 15 May 1995 conviction for possession of a schedule II controlled substance.

Orr claims his 12 October 1993 conviction for sale of cocaine and his 15 May 1995 convictions for distribution of a controlled substance and for possession of a controlled substance should not have been counted because of the above-described claimed agreement with the Government that the charges on which these convictions were based would be dismissed. Although noting that the district court found these offenses were beyond the five-year period during which prior convictions could be challenged, *see* 21 U.S.C. § 851(e), Orr contends there is no statute of limitations regarding his claimed agreement with the Government. In the alternative, he maintains these three convictions were consolidated for sentencing and, therefore, should count as only one conviction. The record does not reflect these convictions were consolidated. Rather, Orr was sentenced for the two 15 May 1995 convictions on the same day. This does not require that they be treated as one conviction. *See United States v. Barr*, 130 F.3d 711, 712 (5th Cir. 1997), *cert. denied*, 523 U.S. 1065 (1998). Orr provides no basis for his contention the 12 October 1993 conviction should be consolidated with the two 15 May 1995 convictions.

17

Orr asserts he received a deferred or suspended sentence for his 15 May *1985* conviction for possession of a controlled substance. (This appears to be a reference to his 15 May *1980* conviction.) As a result, he contends that this conviction should not have been counted. A prior felony conviction, however, includes a state offense which is punishable by over a year of imprisonment, regardless of the sentence actually imposed. *See* U.S.S.G. § 4B1.2, cmt. n.1. Therefore, Orr's being sentenced to two years "conditional discharge" for this offense does not preclude the conviction's being a prior felony offense.

Orr does not contest including in the sentence calculation his 13 April 1985 conviction for delivery of marihuana. Accordingly, based on his various challenges to his prior convictions being counted, Orr asserts only that conviction can be counted. In addition, he contends: he was not given the opportunity to contest the prior convictions; and he should have been sentenced at level 32 and with a criminal history category of II. For the reasons stated earlier, Orr's contention that the prior convictions should not have been counted in the light of the claimed agreement lacks merit. Additionally, Orr has not provided a valid basis for not counting his other prior convictions. He was given an opportunity at sentencing to contest them, and did so. In sum, Orr has not shown error in the district court's application of § 841.

K.

18

Orr asserts the district court clearly erred by attributing, based on trial testimony, 28 ounces of cocaine to him as relevant conduct. Orr has not provided any record citations or legal authority in support of this argument. Therefore, we will not consider it because it is inadequately briefed. *See* ***Yohey v. Collins***, 985 F.2d 222, 224-25 (5th Cir. 1993).

L.

Concerning the supervised release portion of his sentence, Orr contends the district court's application of the sentencing enhancements under U.S.S.G. § 4B1.1 (career offender enhancement) and 21 U.S.C. § 851 (enhancement for prior convictions) was erroneous because it resulted in using the same information twice to "double enhance" the term of such release. Orr offers no argument or citation in support of this assertion. Because Orr has not adequately briefed this issue, we do not consider it. *See **id.***

M.

For the first time on appeal and prior to ***Booker*** being rendered, Orr urged in his reply brief that his sentence be reviewed under ***Blakely v. Washington***, 124 S. Ct. 2531 (2004), because he received a life sentence on the conspiracy count, even though the maximum statutory sentence was 40 years of imprisonment. (Also prior to ***Booker*** being rendered, Orr prepared, *pro se*, a supplemental pleading seeking review under ***Blakely*** for his role in the offense, the drug weight, his career offender status, and his

19

statutory sentence enhancement. Orr's counsel forwarded this to our court for filing, but without adopting it. Orr does not have a "constitutional right to hybrid representation". *United States v. Ogbonna*, 184 F.3d 447, 449 n.1 (5th Cir.), *cert. denied*, 528 U.S. 1055 (1999) (quotation omitted). "By accepting the assistance of counsel [Orr] waives his right to present *pro se* briefs on direct appeal." *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996); *see also* 5TH CIR. R. 28.7 ("Unless specifically directed by court order, pro se motions, briefs or correspondence will not be filed if the party is represented by counsel."). Therefore, we do not consider these *pro se* issues.)

Oral argument was held for this appeal after *Booker* was rendered early this year, with supplemental briefs on *Booker* being received before argument. *Booker* held the federal sentencing guidelines are advisory only. 125 S. Ct. at 757. Following oral argument, our court decided *United States v. Mares*, 402 F.3d 511 (5th Cir. 4 March 2005), *petition for cert. filed*, No. 04-9517 (U.S. 31 Mar. 2005), which articulated our understanding of *Booker*. As noted, Orr did not raise the below discussed *Booker*-issues at trial. Therefore, review is only for plain error. *See Mares*, 402 F.3d at 520.

In his post-*Booker* brief, Orr requested: remand for resentencing because his sentence did not meet *Booker*'s

20

reasonableness standard; and review of his sentence enhancements. As discussed, his enhancements were based on prior convictions which need not be proven to a jury beyond a reasonable doubt. *See Booker*, 125 S. Ct. at 756 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added)). In sum, there was no error, much less reversible plain error.

## N.

Orr maintains the cumulative effect of the claimed errors warrants a new trial or dismissal of the indictment with prejudice. Obviously, because Orr's contentions fail for each issue, cumulative error analysis is unnecessary. *Cf. United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) (holding "[b]ecause we find no merit to any of Moye's arguments of error, his claim of *cumulative* error must also fail" (emphasis in original)).

## III.

For the foregoing reasons, Orr's conviction and sentence are

*AFFIRMED*.

21