## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51368

United States Court of Appeals
Fifth Circuit

**FILED**
June 28, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

LUIS FELIPE RODRIGUEZ, also known as Vaquero,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM and HIGGINSON, Circuit Judges.*

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Luis Felipe Rodriguez was convicted by a jury for, among other things, conspiracy to possess with intent to distribute cocaine. Due to Rodriguez's prior convictions, the Government sought and the district court imposed a life sentence. Finding no reversible error, we affirm.

I.

From January 2011 to December 2012, Defendant Luis Felipe Rodriguez, also known as Vaquero, engaged in drug trafficking as well as money laundering and bulk cash smuggling activities. Specifically, Rodriguez worked

---

* Judge Edward Prado, a member of the original panel in this case, retired from the Court on April 2, 2018, and therefore did not participate in this decision. This case is being decided by a quorum. 28 U.S.C. § 46(d).

No. 16-51368

with Drug Trafficking Organizations out of Piedras Negras, Coahuila, Mexico to supply and transport marijuana, cocaine, and methamphetamine to multiple cities in Texas. To do so, Rodriguez hired couriers to coordinate the transportation of drugs, which were typically wrapped in black tape and hidden in compartments of vehicles to avoid detection at border checkpoints.[1] In total, Rodriguez transported over 25 kilograms of cocaine, over 45 kilograms of marijuana, and 366 grams of methamphetamine, and laundered approximately $1,168,300 in drug proceeds to Mexico.

In February 2014, the Government charged Rodriguez in an Initial Indictment with a single count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, ("Count One"). On April 10, 2014, the Government filed a Notice of Enhanced Penalty pursuant to 21 U.S.C. § 851, notifying Rodriguez of the Government's intention to enhance his sentence to mandatory life imprisonment based on two prior drug convictions. Six days later, the Government filed a Superseding Indictment, charging Rodriguez with the same Count One and adding two charges of conspiracy to smuggle bulk cash and conspiracy to launder money.[2] On May 8, 2014, Rodriguez objected to the Government's Notice of Enhanced Penalty.

On February 17, 2015, the court granted Rodriguez's attorney's oral motion to withdraw, and appointed new counsel. The Government then filed a

---

[1] Multiple co-conspirators testified to their roles in Rodriguez's scheme. Co-conspirator Rod Christopher Porras testified about hidden compartments in vehicles. Co-conspirator Reynaldo Zamora testified that money was stashed in hidden compartments in his vehicle. And co-conspirator Jaime Crail testified that he conducted several runs for Rodriguez, driving a total of six loads of cocaine, as well as marijuana, methamphetamine, and ammunition, from Piedras Negras to cities in Texas, and $275,000 to Rodriguez's boss in Piedras Negras.

[2] Rodriguez filed a motion to dismiss the added charges of conspiracy to smuggle bulk cash and launder money for speedy trial violations, which the district court denied. Rodriguez does not appeal the district court's denial of his motion to dismiss.

No. 16-51368

Second Superseding Indictment on March 4, 2015, adding a charge of conspiracy to possess with intent to distribute methamphetamine.[3] Rodriguez pleaded not guilty to the Second Superseding Indictment, and a jury convicted him on Count One, conspiracy to smuggle bulk cash, and conspiracy to launder money. The jury acquitted Rodriguez of the methamphetamine charge.

The Presentence Report ("PSR") set Rodriguez's offense level at 40 and his criminal history category at VI based on two prior drug trafficking offenses. The district court, overruling Rodriguez's objections, sentenced him to life in prison for Count One, 60 months for conspiracy to smuggle bulk cash, and 240 months for conspiracy to launder money, to run concurrently. Rodriguez appeals his mandatory life sentence, arguing that the Government should have refiled a new § 851 information on the Second Superseding Indictment and that the district court erred by treating Rodriguez's prior drug convictions as separate convictions for purposes of applying the sentencing enhancement pursuant to 21 U.S.C. § 841(b)(1)(A).[4]

II.

A defendant's sentence may not be enhanced based on a prior conviction unless the Government complies with the requirements of 21 U.S.C. § 851, which states:

---

[3] At trial, co-conspirator Crail testified that in February 2012, he drove methamphetamine from Piedras Negras to San Antonio; that he delivered the methamphetamine to Rodriguez but later realized that a package containing approximately 400 grams of methamphetamine was left in the truck; that he called Rodriguez who offered to pick up the package; that Crail declined the offer, stating that he would sell it to one of his "buddies;" and that Rodriguez insisted again but Crail, having found a buyer, declined. While Crail was en route to the buyer's house, San Antonio police officers apprehended him, seizing the methamphetamine and a loaded semi-automatic handgun.

[4] Rodriguez additionally appeals the PSR's classification of Rodriguez as a career offender, inclusion of the methamphetamine seized from Crail as relevant conduct, and addition of 2 levels to Rodriguez's base offense level for Crail's possession of a handgun. We find no error in the district court's interpretation and application of the U.S. Sentencing Guidelines.

No. 16-51368

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, *the United States attorney files an information* with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.[5]

We review the Government's compliance with Section 851 de novo.[6]

This case presents the following question: whether the Government must refile a Section 851(a) information after filing a Second Superseding Indictment. We have not addressed that question explicitly, but we have alluded to its answer in *Blevins*.[7] In that case, we ruled that the Government must refile a Section 851(a) information when an indictment is dismissed but specified that our ruling did not "reject the caselaw from other circuits . . . which allow[] one Section 851(a) notice to suffice for successive trials on the same indictment after a mistrial or a reversal on appeal, or for a trial on a superseding indictment."[8] Now that the issue is presented head on, we join other circuits to conclude that one Section 851(a) information suffices for a trial on a superseding indictment.[9]

---

[5] 21 U.S.C. § 851(a)(1).

[6] *United States v. Rios-Espinoza*, 591 F.3d 758, 760 (5th Cir. 2009).

[7] *United States v. Blevins*, 755 F.3d 312 (5th Cir. 2014).

[8] *Id.* at 323.

[9] *See, e.g.*, *United States v. Dickerson*, 514 F.3d 60, 64 n.3 (1st Cir. 2008) ("We . . . join other circuits in holding that the prosecution need not have filed a second § 851(a) notice after the second superseding indictment for the notice to be effective.");*United States v. Cooper*, 461 F.3d 850, 854 (7th Cir. 2006) ("[W]here the Government files a timely Section 851 notice, it is not required to file a second notice after an intervening event, such as a trial or a superseding indictment, in the same case."); *United States v. Mayfield*, 418 F.3d 1017, 1020 (9th Cir. 2005) ("[F]iling the information and giving the section 851(a) notice before [the defendant's] first trial obviated the need to refile the information and regive that notice before his second trial."); *United States v. Kamerud*, 326 F.3d 1008, 1014 (8th Cir. 2003) ("[T]he government is not required to refile a notice of enhanced sentence under 21 U.S.C. § 851 after the return of the superseding indictment.") (citing *United States v. Wright*, 932 F.2d 868, 882 (10th Cir. 1991)); *United States v. Williams*, 59 F.3d 1180, 1185 (11th Cir. 1995) (holding that the government is not required to refile a Section 851 information for multiple trials in same

No. 16-51368

Rodriguez acknowledges that other circuits agree that the Government need not refile a Section 851(a) information following a superseding indictment; however, he claims that his case differs because he obtained a new attorney after the Government filed its Section 851(a) information but before the Government filed its Second Superseding Indictment.[10] Though this argument is not without merit, we conclude that a change in counsel, without more, does not render the Government's Section 851(a) information ineffective for a trial on a superseding indictment.

Rodriguez relies on *Williams* and *Cooper* to support his argument. In *Williams*, the defendants proceeded through three trials: the first ended in reversal due to an evidentiary issue; the second concluded as a result of juror misconduct; and the third trial led to a jury finding both defendants guilty.[11] When the Government sought an enhancement based on one defendant's prior conviction, the district court denied the request because the Government had not refiled a Section 851(a) information prior to the third trial—the trial for which the defendant was being sentenced.[12]

The Eleventh Circuit reversed, holding that "once the information was filed, it was not necessary that it be refiled for each consecutive trial in the same court."[13] In so holding, the court reviewed the two purposes of Section 851: "The *first* is to allow the defendant to contest the accuracy of the information;" and "[t]he *second* is to allow the defendant to have ample time to determine whether to enter a plea or go to trial and plan his trial strategy with

---

case); *see also, e.g.*, *United States v. Bunch*, 395 F. App'x 996, 998 (4th Cir. 2010); *Vadas v. United States*, 527 F.3d 16, 23–24 (2d Cir. 2007).

[10] Rodriguez additionally argues that the district court was not aware of the enhancement and that the Second Superseding Indictment differed greatly from the original indictment. Neither argument is of legal consequence.

[11] 59 F.3d at 1182.

[12] *Id.* at 1185.

[13] *Id.*

5

full knowledge of the consequences of a potential guilty verdict."[14] The Eleventh Circuit found those purposes to be met, observing that "[t]he same attorney represented [the defendant] at all three trials, knew that the information had been filed, knew about the prior conviction, which was admitted, and had addressed that prior conviction at the sentencing in the first trial."[15]

The Seventh Circuit relied on similar reasoning in *Cooper* when the defendant argued that "the superseding indictment, intervening indictment, and trial required the Government to file a second information before he could be subjected to a second enhanced sentence."[16] Rejecting that argument, the court, among other things, applied the purposes of Section 851(a), finding that the defendant had an opportunity to contest the accuracy of the prior conviction when the Government filed the first information and that the defendant was aware that he could receive an enhanced sentence if found guilty.[17] To support the latter finding, the Seventh Circuit, citing *Williams*, reasoned that the defendant "was represented by the same attorney at the first and second sentencing."[18]

To be sure, these cases support a finding of adequate notice when a defendant is represented by the same attorney throughout the proceedings. But that is all. *Williams* and *Cooper* do not stand for the proposition that a change in counsel renders a Section 851(a) information ineffective. The heart of Rodriguez's claim is that he lacked notice of the enhanced penalty. We find

---

[14] *Id.* (emphasis in original); *see also United States v. Arnold*, 467 F.3d 880, 887 (5th Cir. 2006) (explaining that *Williams* "has stated the guiding purposes of § 851").

[15] *Williams*, 59 F.3d at 1185.

[16] 461 F.3d at 853.

[17] *Id.* at 854–55.

[18] *Id.* at 855.

no support for that claim when we juxtapose the record with the two purposes of Section 851.

As mentioned, the first purpose of Section 851 is "to allow the defendant to contest the accuracy of the information."[19] The first purpose is met here. To begin, Rodriguez's first counsel filed an Objection to the Government's Notice of Enhanced Penalty on May 8, 2014, arguing that Rodriguez's prior convictions "should not be used as a basis to enhance [Rodriguez's] punishment to a mandatory life sentence." Rodriguez's Objection specified that "the convictions occurred on the same date and presumably at the same time;" that "the court ordered the sentences to run concurrently;" and that "the two prior convictions that form the basis [of the] enhancement were part of a single act of criminality and thus should be treated as a single conviction under section 841(b)(1)(A)."

In addition, during Rodriguez's first sentencing hearing, his new counsel objected to the enhancement, stating "the PSR does not mention the enhancement." The district court then read 21 U.S.C. § 851 aloud, highlighting the "procedure for the denial" of an enhancement, which states:

> If a person denies any allegation of the information of prior conviction or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The Court shall hold a hearing to determine any issues raised by the response which would except the person from the increased punishment.[20]

Thereafter, the district court asked Rodriguez's counsel to confer with Rodriguez to "decide whether [he] need[ed] a hearing or not on the – on the information." Rodriguez's counsel then requested a hearing, which the district court set. Around four months later, at Rodriguez's second sentencing hearing,

---

[19] *Arnold*, 467 F.3d at 887 (internal quotation marks omitted).
[20] 21 U.S.C. § 851(c)(1).

the court heard argument from Rodriguez's counsel on why the enhancement should not apply. Though the district court was not persuaded, it cannot be said, at least on this record, that Rodriguez was not allowed to contest the accuracy of the information.

The second aim of Section 851 is to ensure that the defendant has "ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences."[21] We also find that purpose met. As an initial matter, we note that Rodriguez's first counsel remained in the case for more than ten months after receiving the Government's Notice of Enhanced Penalty. And when his new counsel took over in February 2015, both the Government's Notice *and* Rodriguez's Objection to that Notice were present on the docket. Rodriguez's new counsel then had over six months to review the record in this case and develop a strategy to plea or proceed to trial. That plainly constitutes sufficient notice. As we explained when we rejected the converse proposition that the Government must refile a Section 851(a) information after the *prosecuting* attorney changes: "Key is that the information is filed and served before the defendant moves to resolve the merits of criminal indictment. Nothing in the statutory language supports the notion that new information documents must be filed when the prosecuting attorney changes [or, as we now hold, when the defense attorney changes]. Rather, the statute contemplates a single information to put the defendant on notice of the government's intent to seek an enhancement and the grounds for it."[22]

In addition, Rodriguez's counsel's statements at sentencing are not those of a counsel who lacked "ample time" to develop a litigation strategy. For

---

[21] *Arnold*, 467 F.3d at 887 (internal quotation marks omitted).
[22] *United States v. Valdez*, 548 F. App'x 995, 1005 (5th Cir. 2013).

example, Rodriguez's counsel first objected to the enhancement because "the PSR did not mention the enhancement" and later stated that he had "earlier attempted to get the discovery brought in the underlying offenses" to determine whether there was "factual connectivity" between the two convictions. Furthermore, Rodriguez's counsel acknowledged that "the enhancement was filed before [he] came on board." And at the second sentencing hearing, after the district court rejected Rodriguez's challenge to the enhancement, Rodriguez's counsel lodged a final objection, stating "we were not provided proper notice of -- of the enhancements due to the mischaracterization of the offense of conviction." These statements indicate that Rodriguez's new counsel was aware of the enhancement and its underlying basis.

In light of the record before us, we find that the Government complied with the notice requirements of Section 851(a).

## III.

Rodriguez next argues that the district court erred by treating his prior drug convictions as separate convictions for purposes of applying the sentencing enhancement under 21 U.S.C. § 841(b)(1)(A). This Court reviews the application of sentencing provisions de novo and facts supporting those applications for clear error.[23]

Section 841(b)(1)(A) provides, in pertinent part, that "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment."[24] In *Barr*, this Court addressed the issue of "when, if ever, we should treat two separate convictions as a 'single act of criminality' for purposes of [21] U.S.C. § 841(b)(1)(A)" and

---

[23] *United States v. Green*, 293 F.3d 886, 894 (5th Cir. 2002).
[24] 21 U.S.C. § 841(b)(1)(A).

"determined that separate convictions constitute one offense when the violations occur simultaneously as opposed to sequentially."[25] This Court has "consistently treated two separate transactions, even when committed in quick succession, as different criminal episodes."[26]

On June 17, 2004, Rodriguez was arrested for possessing 39.8 kilograms of marijuana in his vehicle while attempting to enter the United States at the Port of Entry in Eagle Pass, Texas. While out on bond for that offense, Rodriguez committed his second offense five months later. On November 30, 2005, he was arrested for offering $20,000 to a confidential source to transport a load of marijuana to San Antonio and $5,000 to continue the transport to Dallas. On that day, authorities seized 404.3 kilograms of marijuana from Rodriguez. On January 30, 2007, the district court sentenced Rodriguez for the two offenses, imposing 60 months imprisonment for the possession offense and 72 months for the conspiracy offense to run concurrently.

Rodriguez claims that his two prior convictions were consolidated and thus should be treated as one conviction for purposes of the enhancement. In support of this assertion, Rodriguez proffers the following evidence of consolidation: (1) The district court judge reassigned both cases to a visiting judge; (2) The same magistrate judge presided over rearraignment for both cases on the same day; (3) On August 30, 2006, the district court signed an order resetting sentencing for both cases, consolidating the two cases into one document; (4) The two cases shared the same PSR; and (5) Rodriguez was sentenced on the same day for both cases based on the consolidated PSR.

---

[25] *United States v. Barr*, 130 F.3d 711, 712 (5th Cir. 1997) (finding defendant's sale of crack cocaine on two successive days to the same buyer constituted separate offenses).

[26] *United States v. Smith*, 228 F. App'x 383, 390 (5th Cir. 2007) (holding that defendant's sales of crack cocaine on consecutive days to the same undercover agent constituted separate predicate drug offenses) (citing *United States v. Washington*, 898 F.2d 439 (5th Cir. 1990)).

No. 16-51368

Applying *Barr*, we find that Rodriguez's two prior convictions do not constitute a "single act of criminality" because Rodriguez committed these offenses "sequentially, not simultaneously."[27] Rodriguez points to *Orr* for the proposition that this Court "may consider cases which have been consolidated to count as one conviction for purposes of the sentencing enhancement."[28] *Orr*, however, rejected the defendant's argument that receiving a sentence for two prior convictions on the same day required this Court to treat those convictions as one.[29] The remaining cases that Rodriguez relies on examine whether a defendant's prior convictions were consolidated within the meaning of Section 4A1.2 of the U.S. Sentencing Guidelines.[30] Rodriguez provides no authority, and we find none, to support his argument that his prior convictions should be consolidated for purposes of Section 841.

IV.

We affirm the district court's sentencing of Defendant Luis Felipe Rodriguez.

---

[27] 130 F.3d at 712.

[28] *United States v. Orr*, 136 F. App'x 632, 641 (5th Cir. 2005).

[29] *Id.*

[30] *See, e.g.*, *United States v. Haynes*, 532 F.3d 349, 353–55 (5th Cir. 2008) (remanding defendant's ineffective assistance of counsel claim for counsel's failure to reasonably investigate application of the career-offender enhancement when, among other things, the offenses were not separated by an intervening arrest); *United States v. Kates*, 174 F.3d 580, 584 (5th Cir. 1999) (holding that defendant's prior convictions were not consolidated under the sentencing guidelines simply because the defendant received concurrent sentences); *United States v. Huskey*, 137 F.3d 283, 288 (5th Cir. 1998) (finding that defendant's prior state convictions were *de facto* "consolidated" under the sentencing guidelines because the charges "appeared in the same criminal information under the same docket number").